LANGLEY; RICHARDSON *v.* STATE OF INDIANA.

[Nos. 970S199, 470S97. Filed March 22, 1971.]

*William C. Erbecker, Herbert W. Johnson, Jr.,* of Indianapolis, for appellant, Langley. *Gil I. Berry, Jr.,* of Indianapolis, for appellant, Richardson.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett, Robert F. Colker,* Deputies Attorney General, for appellees.

HUNTER, J.—To facilitate our consideration of the above captioned cases, we have consolidated them for purposes of discussion. The two cases involve questions of substantial import relating to post conviction relief, both procedural and substantive. We will commence by briefly outlining the nature and status of Richardson's and Langley's appeals.

Richardson was originally charged by affidavit with the crime of robbery by putting in fear. Upon a plea of not guilty, the case was tried before a jury which ultimately found him guilty of theft of property; a fine of five hundred dollars ($500) was assessed and Richardson was sentenced to the Indiana Reformatory for a period of not less than one [1] nor more than ten [10] years. No timely motion for new trial was filed nor has Richardson in any manner previously sought appellate review of his conviction.

Approximately a year after his conviction in November of 1968, Richardson filed a petition for post conviction relief

pursuant to Rule P.C. 1; a denial of relief by the trial court has occasioned his appeal. In his brief, Richardson argues two points raised by his P.C. 1 petition, namely: (1) that the trial court erred in its handling of a verdict first returned by the jury and in its acceptance of a second verdict subsequently returned; and (2) that he was prejudiced by improper pre-trial line-up procedures.

Langley, on the other hand, has been before this court previously by way of a direct appeal. He was originally charged by affidavit with the crimes of robbery and a violation of the 1935 Firearms Act. Trial by jury resulted in a conviction of robbery and Langley was sentenced to the Indiana State Prison for a term of not less than ten [10] nor more than twenty-five [25] years. Following his conviction, Langley filed an appeal before this court where his conviction was affirmed. *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611, cert. den. 393 U. S. 835. In that appeal this court specifically decided that: (1) the evidence was sufficient to support Langley's conviction; (2) the trial court was not in error wherein it refused Langley permission to file a belated motion for new trial; and (3) the question of the timeliness of the trial court's ruling on his motion for new trial was not preserved to provide a basis of attack on appeal. As a collateral matter, this court had occasion to consider the effectiveness of trial counsel's assistance, that question being of pertinence in determining the propriety of the trial court's action in refusing to entertain the belated motion for new trial.

Thereafter, Langley filed an action for post conviction relief in the trial court pursuant to Rule P.C. 1. Upon an adverse ruling there rendered, he brings this appeal, alleging essentially that the trial court erred in finding that he had failed to meet the necessary burden of proof qualifying him for relief on two asserted particulars: (1) a denial of his constitutional right to the effective assistance of trial counsel; and (2) wrongful suppression of evidence at trial favorable to appellant.

Due to the nature of and the manner in which the issues are here raised for our consideration in these two appeals, we feel compelled to briefly outline the office or function our post conviction remedy rules were designed to play in Indiana's scheme of criminal appellate practice. As will be seen, serious question may be raised as to the right of a criminal defendant to indefinitely prolong litigation on his case.

In the name of justice and fair play this court, through its promulgation of our post conviction remedy rules and by case decision, has sought to insure that each defendant will have an avenue available by which he may challenge on appeal the correctness of his conviction. It was not our intent, however, to provide a means whereby one convicted could repeatedly re-litigate claims of improper conviction, or could *unqualifiedly*, upon a legitimate waiver of the right to appeal either expressly made or to be inferred through application of appropriate legal principles, raise an untimely challenge directed at some aspect of the proceedings against him. In attempting then to correlate the role of the post conviction remedy rules with those afforded by direct appeal and to define their appropriate use in a challenge directed at a criminal proceeding, it would seem obvious that this court has a vested interest in guarding against a perversion of the rules through improper invocation of their protections or a prostitution of the spirit of criminal justice through sanctioned "multi-appeals" thought to be afforded.

While we concede to no less than a profound concern for the maintenance of strict adherence to the notion of fundamental fairness and due process throughout the course of a criminal proceeding, it might at the same time be admitted that our seemingly over indulgent attitude towards the preservation of a criminal defendant's "rights" has been prompted by the increasingly liberal manner in which the federal courts have interpreted the extent of their jurisdiction in such matters. A cursory reading of such cases as *Townsend* v. *Sain* (1963), 372 U. S. 293, 9 L. Ed. 2d 770 and *Fay* v. *Noia* (1963), 372 U. S. 391, 9 L. Ed. 837 demon-

strate the relative ease with which a duly convicted felon may invoke the jurisdiction of the federal courts on a petition for habeas corpus, thereby placing the very integrity of a state's criminal proceeding in question. Clearly, then, it may be said that one of the functions of our post conviction remedy rules is to preserve what sanctity remains to this state's disposition of a criminal charge by allowing a convicted criminal defendant ample opportunity to present claims for relief in the courts of this state before resort must be had to the federal courts.

In the cases before us, we find two petitioners seeking to avail themselves of the remedies thus provided. A determination as to the appropriateness of the trial court denial of relief demands further analysis of each individual case. As we have noted, Richardson has never prosecuted an appeal from his conviction and approximately one year elapsed before he filed his P.C. 1 petition. Both issues which he now is attempting to present are of such a nature that they might have been reviewed upon a direct appeal. An initial cause for concern, therefore, becomes one of waiver.

That a criminal defendant has the *right* to appeal from a conviction can no longer be doubted. Secondly, it might be said with an equal degree of certainty that the preferred method of seeking appellate review of a criminal conviction is through direct appeal upon the overruling of a motion to correct errors.[1] See Rules P.C. 1 (A) (2). Such a procedure provides an expeditious means by which a trial judge may have an opportunity to first correct his own errors while the circumstances surrounding the alleged error are still fresh in his memory or, where he improperly refuses to do so, a means to permit speedy vindication in this court. Also, the permissible scope of review on direct appeal is well defined and broader than that permitted by collateral attack

---

1. Repeated reference will be made to the motion to correct errors, notwithstanding the fact that at the time of both petitioners' convictions a motion for new trial would have been appropriate. Since both motions serve essentially the same function in a criminal proceeding, we will utilize, for purposes of discussion, the nomenclature of the new rules.

through post conviction relief, thus insuring a full and timely airing of all complaints of error respecting the conviction. Compare e.g. the grounds for relief under Rule P.C. 1 with those grounds available under Rule TR. 59 on a motion to correct errors. Finally, a criminal defendant is less likely to run into procedural difficulties or questions of waiver under our well defined remedy of direct appeal.

To assure that each convicted defendant is aware of his right to appeal, a trial judge is now required, following sentencing in a felony case, to advise the defendant that: (1) he is entitled to file a motion to correct errors; (2) he is entitled to take an appeal, but to do so a motion to correct errors must be filed; and (3) if he is financially unable to employ counsel for purposes of filing a motion to correct errors and taking an appeal, the court will appoint one at public expense. Rule CR. 11.

Notwithstanding the guarantee of direct appellate review of a criminal proceeding, it is well settled that a defendant, through a variety of circumstances, may waive his right to appeal. We mention that fact since such a waiver may ultimately be dispositive of a petitioner's P.C. 1 petition for relief. This is not to say that a petitioner must first establish the fact that no waiver has occurred in relation to a particular error from which relief is sought in order to obtain a hearing. It would, however, be a matter which the state might urge as a basis for denying relief. It is therefore apparent that upon being properly raised, the matter of waiver and the collateral issues necessarily involved should be of initial concern at the P.C. hearing.

Here, for example, no motion for new trial was timely filed nor did Richardson ever attempt to file a belated motion to correct errors as provided for by Rule P.C. 2. It has been held that the right to a direct appeal may essentially be waived where no timely motion to correct errors has been filed, *Turner* v. *State* (1968), 249 Ind. 533, 233 N. E. 2d 473; *State ex rel. Macon* v. *Orange Circuit Court* (1964), 245 Ind. 269, 195 N. E. 2d 352; *Sutton* v. *State*

(1960), 240 Ind. 512, 166 N. E. 2d 651; *Groover* v. *State* (1959), 239 Ind. 271, 156 N. E. 2d 307,—unless the defendant can show that the failure to do so was not due to his fault and that he has been diligent in requesting permission to file a belated motion to correct errors. Rule P.C. 2(A). The mere filing for relief at a later time under the provisions of P.C. 1 does not insulate a petitioner from a state sponsored inquiry into the matter of waiver on the issues raised by the petition. Collateral to such an inquiry and determination on the question of waiver may be a question as to the effectiveness of trial counsel's assistance where he has considered and determined that no, or only certain, appealable issues exist to be pursued. However, here there has been no assertion of waiver in the respect to which we have above referred.

Secondly, and of pertinence to Richardson's claim for relief under P.C. 1, it has been likewise held that alleged errors, to be appealable, must be objected to at trial, thus enabling the trial judge to promptly correct or avoid error as the proceedings progress. See e.g. *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358; *Hensley* v. *State* (1969), 251 Ind. 633, 244 N. E. 2d 225; *Sams* v. *State* (1969), 251 Ind. 571, 243 N. E. 2d 879; *Pinkston* v. *State* (1968), 251 Ind. 306, 241 N. E. 2d 138; *White* v. *State* (1968), 251 Ind. 100, 239 N. E. 2d 577 and other cases too numerous to cite. Such a rule is well grounded in reason, for it affords a trial judge the opportunity to initially pass upon an objectionable aspect of the trial and avoid the commission of error which might possibly give rise to an appeal. Furthermore, such a requirement bars a litigant from asserting error on appeal, objection to which he chose to forego for strategic reasons at trial. Thus, where a defendant is effectively represented by trial counsel and objections to trial procedure, admission of evidence, etc. are foregone, a binding waiver of the right to object may be asserted against the defendant. See *Henry* v. *State of Mississippi* (1965), 379 U. S. 443, 13 L. Ed. 2d 408. Such was our holding by clear inference in cases such as *Kerlin* v. *State* (1970), 255 Ind. 420, 265 N. E. 2d 22; *Jones* v. *State* (1970), 254 Ind.

499, 260 N. E. 2d 884; *Moore* v. *State* (1970), 254 Ind. 23, 256 N. E. 2d 907; *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358. The record before us of Richardson's trial discloses neither an objection to the introduction of the allegedly tainted evidence pertaining to his in-court identification, or to the nature of the jury's verdict ultimately returned. Again, however, the question of waiver is one to be argued by the state; although the mere filing by a petitioner under Rule P.C. 1 does not render him immune from such an assertion, it must be state sponsored.

Pointing out the waiver defense available to the state demonstrates the essential nature of the post conviction remedy under Rule P.C. 1, for as presently constructed, it involves in most if not all cases a collateral attack upon some aspect of a petitioner's conviction or confinement. For relief to be granted where the element of waiver has been introduced at the post conviction hearing, there must be some substantial basis or circumstance presented to the trial court which would satisfactorily mitigate a petitioner's failure to have pursued or perfected a remedy through the normal procedural routes. Where, however, the state, as it did in this case, chooses to meet a petitioner's allegations on their merits at the hearing, we must do likewise on appeal.[2]

Turning then to Richardson's specific contentions, it is first argued that the trial judge erred in his handling of the first verdict returned by the jury and erred in his acceptance of the second verdict subsequently returned. The record reveals that the jury, upon a consideration of the evidence, returned with a verdict which reads as follows:

> "We, the Jury, find the defendant, RUDOLPH RICHARDSON, GUILTY of the crime of Theft in a sum less than $100, as covered by the affidavit and that he be imprisoned for 5 yrs. and that his age is 26 years."

2. It should be noted that the state *on appeal* has asserted petitioners' waiver of the right to challenge the admission of testimony relating to his identification since no objection was made at trial. However, it would seem that the state is precluded from asserting waiver on appeal where they made no mention concerning it at the hearing on the same basis that an appellant is normally denied the right to raise an issue for the first time on appeal.

An objection was then entered as to the form of the verdict and the court directed the jury to return to the jury room to further deliberate. The verdict subsequently returned reads as follows:

> "We, the Jury, find the defendant, RUDOLPH RICHARD-SON, guilty of the crime of theft of Property and that he be find $500.00 and that he be imprisoned for not less than one (1) year nor more than ten (10) years and be disfranchised and rendered incapable of holding any office of trust or profit for 10 and that his age is 26 years."

From a reading of the first verdict, it would appear that the jury intended that Richardson be sentenced under Ind. Ann. Stat. § 10-3039*(1)* (1970 Supp.) for theft of property not from the person and of less than one hundred dollars ($100). The statute, however, provides for an *indeterminate* sentence of not less than one [1] nor more than five [5] years and it was apparently on this ground that the verdict was found objectionable, for the jury verdict actually prescribed a *determinate* sentence of five [5] years.

Upon returning the second time, it is clear that the jury intended that Richardson be sentenced under Ind. Ann. Stat. § 10-3039(*4*) (1970 Supp.) which provides for a fine not to exceed five thousand dollars ($5,000) and imprisonment for a period of not less than one [1] nor more than ten [10] years or both regardless of the monetary value of the property stolen in *certain enumerated cases*. One such case is where the property was obtained by means of a threat to inflict physical harm to the person threatened or any other person.

On the basis of the evidence introduced at trial, it is clear that the jury was justified in returning a verdict which would subject Richardson to the sentence prescribed by ■ § 10-3039(*4*).[3] The question becomes, therefore, whether the jury could rightfully return a verdict invoking

---

3. The victim of the theft, one Florence Seals, testified that Richardson approached her with a gun in his hand and asked for the money. Surely such action constitutes a "threat of inflicting physical harm" as contemplated by the statute.

a greater penalty due to the nature of the offense after having been instructed that its initial verdict was not in proper form. We conclude that it could. It has been said that it is the duty of the trial judge to see that the verdict returned by the jury is in proper form. *West* v. *State* (1950), 228 Ind. 431, 92 N. E. 2d 852; *Straw* v. *State* (1925), 197 Ind. 606, 151 N. E. 695. It has further been noted that if the jury is instructed to correct its verdict, it has the power and right to change the whole verdict and bring in an entirely different one. *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N. E. 2d 677; *Limeberry* v. *State* (1945), 223 Ind. 622, 63 N. E. 2d 697. The law is clearly against Richardson on his first contention.

Secondly, Richardson would argue that he was prejudiced by improper line-up procedures and by the state's failure to have counsel appointed for him which tainted his in-court identification. Assuming for the moment that an improper line-up procedure had been conducted in derogation of Richardson's rights under *United States* v. *Wade* (1967), 388 U. S. 218, 18 L. Ed. 2d 1149, the relief requested by Richardson would still not be in order. We note that Richardson was identified at trial by no less than five individuals who saw him at the scene of the crime. The testimony indicates that only three of these persons were involved in the pre-trial identification of Richardson. The two remaining witnesses, one of whom was a police officer that gave chase at the scene, positively identified him. It is therefore clear that there was sufficient *independent* evidence introduced relating to the Richardson's identity, rendering the pre-trial identification harmless error if, in fact, error was committed at all. See *Chapman* v. *State of California* (1967), 386 U. S. 18, 17 L. Ed. 2d 705.

From the foregoing, it is clear that the trial court properly denied relief to Richardson on his P.C. 1 petition and that decision must be affirmed.

We next turn to a consideration of Langley's appeal. Langley was tried while represented by counsel appointed by the state due to his lack of financial resources. Upon a guilty

verdict, trial counsel filed a motion for new trial which was overruled. Thereafter, Langley requested appointment of appellate counsel for the purpose of prosecuting an appeal to this court. Although permission was granted and appointment made, Langley, with the aid of his family, secured sufficient funds to retain an attorney who has since represented him.

Prior to launching his original appeal, Langley, by counsel, requested permission to file a belated motion for new trial, which motion contained, among others, those issues sought to be presented under his present P.C. 1 petition—ineffective assistance of counsel at trial and suppression of evidence by the state. The trial court denied this request. Subsequent to the trial court's ruling, Langley appealed arguing those points respecting alleged error properly preserved by the original motion for new trial as well as the trial court's refusal to entertain his belated motion for new trial. Our disposition of that appeal has been previously noted.

A question that comes immediately to the attention of this court is the extent to which a defendant will be allowed to argue an issue raised by his P.C. 1 petition where review of that same issue has formerly been denied on direct appeal. Although we have previously indicated that in some instances an issue may be so reviewed (see e.g. *Ayad* v. *State* [1970], 254 Ind. 430, 261 N. E. 2d 68), it would seem that the answer to this question depends to a large extent upon the nature of the issue presented, the manner in which appellate review was sought and the reasons advanced for a denial of review on the merits. To unreservedly hold the door open for appellate review under the post conviction remedy rules, regardless of the circumstances which preceded, would per force characterize post conviction relief as some sort of "super-appeal" contrary to its intended function.

Here, as we have noted, Langley attempted to raise certain issues by the filing of a belated motion for new trial. Subsequent to a decision by this court that his petition to file a

belated motion was properly denied, he sought review pursuant to our post conviction remedy rules on precisely the same issues.

It should be noted that the basis for our initial determination that the trial court correctly refused to allow Langley permission to file a belated motion for new trial was that he failed to satisfy a condition precedent to granting permission under old Supreme Court Rule 2-40, i.e. by showing diligence in attempting to file. Such a requirement is retained under Rule P.C. 2. A showing of diligence is not a prerequisite to relief under P.C. 1, however, and it would seem apparent that a petitioner could successfully seek post conviction relief upon a particular allegation of error under Rule P.C. 1 despite the fact that he would fail to qualify for consideration on the merits under Rule P.C. 2 due to his lack of diligence in presenting the question. It should again be emphasized, neverthelss, that a question of waiver may be presented as a defense to such a petitioner's claim. Where the defense of waiver is raised, we have already noted that a petitioner must then present some substantial basis or circumstance which would satisfactorily mitigate his failure to pursue or perfect a remedy through the normal procedural channels, i.e. rebut the legal validity of the waiver defense. Although we do not purport to articulate a list of the bases for such a collateral attack, it is clear that one such persuasive circumstance, if adequately proved, would be the ineffective assistance of counsel. Clearly it would be inappropriate to assert a binding waiver against a petitioner where it could be shown that the alleged waiver resulted from ineffective assistance of counsel whether during pre-trial proceedings, at trial or following trial in the preparation of an adequate motion to correct errors.

We mention ineffectiveness of counsel's assistance for this is one of the reasons advanced by Langley for relief. Before discussing that matter specifically, however, a distinction between two separate situations should be noted. Where the effectiveness of trial counsel's assistance is itself one of the

grounds urged for relief, the defense of waiver would only be appropriate where it could be shown that petitioner knowingly, voluntarily and intelligently waived the right to assert the issue previously by presentation first to the trial court and then to this court on appeal. If a waiver of this nature cannot be shown, the trial court, at the P.C. 1 hearing should immediately go to the merits of the contention. Where a petitioner, however, merely alleges the commission of error in some respect occurring during pre-trial, trial or post-trial proceedings, the issue of trial counsel's effective assistance becomes collateral only to the question of waiver in pursuing remedial relief on the primary issue upon which the P.C. 1 petition for relief is premised; thus a determination as to the effectiveness of trial counsel's assistance may be necessary before reaching the merits of the petition, even though not asserted as a primary ground for relief.

Langley, in his petition for post conviction relief is presenting as one of his primary grounds for relief the general ineffectiveness of trial counsel's assistance. That question was heard in the trial court at the P.C. 1 hearing on its merits and is likewise before use. In determining whether there was sufficient evidence presented to the trial court on this issue to warrant relief, we note parenthetically that we have had occasion to consider the matter previously. Interestingly enough, Langley's present counsel also urged the general ineffectiveness of trial counsel's assistance in his petition to file a delated motion for new trial. The issue, therefore, was then considered by the trial court, since the matter alleged had a direct bearing on Langley's diligence in attempting to file the belated motion, and similarly by us in passing upon the propriety of the trial court's refusal to grant permission to file the belated motion.

In our opinion on Langley's original appeal, we indicated that Langley's trial counsel appeared, on the basis of the record then before us, to have effectively assisted him during the course of his trial. Even though that determination can not be held as conclusive on the merits of the contention now

made, it concededly having been before us only collaterally to the trial court's decision on the question of diligence, we nevertheless gave extensive attention to the assertion:

> ". . . in the interest of putting this matter at rest, we have reviewed the record in an effort to determine whether or not appellant's Constitutional Rights were denied by the Court failing to provide appellant with competent trial counsel.
>
> . . . .
>
> Our review of appellant's trial leads us to conclude that appellant totally lacks strong and convincing proof to overcome the foregoing presumption [it is presumed that an attorney will discharge his full duty and it should require strong and convincing proof to overcome this presumption]; *in fact, there is an absence of any proof.*" (our emphasis) *Langley* v. *State, supra,* 250 Ind. at 36-37, 232 N. E. 2d at 615.

This pronouncement was not lightly made; a review of the testimony introduced at the P.C. 1 hearing fails to disclose sufficient evidence which would have justified the trial court in arriving at a contrary conclusion.

Langley next asserts that he is entitled to relief for the reason that the state suppressed certain evidence at his trial.[4] It is contended that the state subpoenaed two witnesses whose testimony would have been favorable to him and that the state's failure to call them at trial amounts to suppression of evidence which, under the case of *Brady* v. *State of Maryland* (1963), 373 U. S. 83, 10 L. Ed. 2d 215, constitutes a deprivation of his constitutional rights to such an extent as to vitiate his conviction.

Petitioner, in our view, has misapplied the holding of *Brady*. In that case, evidence was kept from one accused of a crime; it was evidence of which he had *no personal knowledge.* Here, Langley *knew* of the witnesses and what their testimony would have been. Such being the case, we fail to see a "suppression" of evidence by the state as alleged or contemplated by the

---

4. Lest there be confusion in what we have previously said, as it relates specifically to Langley's appeal, we feel constrained to point out our reason for going to the merits of this contention—the state failed to assert and prove that review of the alleged error was waived.

*Brady* decision. That the state is not required to call as witnesses all persons who saw the commission of the offense has long been the law. *Keller* v. *State* (1890), 123 Ind. 110, 23 N. E. 1138.

Petitioner also argues that the state's failure to call these witnesses at trial creates a presumption that their testimony would have been favorable to him. Indulging in such a presumption would seem merely academic, however, since the witnesses were present at trial and Langley's counsel had ample opportunity to call them during his defense of the case. That he chose not to do so is not surprising since the witnesses in question were prison inmates and confessed participants in the crime for which Langley was being tried. A rational choice having been made by defense counsel not to call the witnesses, presumably because it was felt that their testimony would be harmful, or at least not helpful, we see no basis for relief whatsoever in this contention.

From the foregoing, it is clear that Langley's petition for post conviction relief was also properly denied.

Judgment of the Marion County Criminal Court, Division II on Richardson's petition for post conviction relief is affirmed (cause #470 S 97) ; likewise, judgment of the Marion County Criminal Court, Division I on Langley's petition for post conviction relief is affirmed (cause #970 S 199).

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 267 N. E. 2d 538.