EDMUND J. CODY *v.* STATE OF INDIANA.

[No. 471S105. Filed December 15, 1972.
Rehearing denied February 5, 1973.]

*Dean E. Richards, James Manahan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher, Stephen D. Clase,* Deputies Attorney General, for appellee.

GIVAN, J.—Appellant was convicted in a jury trial for first degree murder. The record reveals the following facts:

One Flossie Crawley and the appellant had gone together for some period of time prior to the incident in question. The decedent, one William Love, had also gone with Flossie Crawley. Each man had threatened to do bodily harm to the other in vying for the attentions of Miss Crawley.

On the evening of March 14, 1970, the appellant had been in the company of one Mildred Wampler. The couple had visited various taverns in Indianapolis in the course of the evening during which time the appellant had consumed a considerable amount of alcoholic beverage. Miss Wampler testified that she left appellant about 1:30 A.M. on March 15, at which time he was extremely intoxicated. At about 3:30 A.M. the appellant was observed by John C. Nash to enter the White Castle Restaurant located at 720 Massachusetts Avenue in Indianapolis. At that time Flossie Crawley was in the White Castle Restaurant in the company of William Love, the deceased. When the appellant entered the restaurant, he asked to speak to Flossie Crawley. She at first refused but as the appellant persisted, an argument ensued, whereupon the appellant shot Flossie Crawley. At that point William Love attempted to come to Miss Crawley's

aid and was in turn shot by the appellant. Miss Crawley's wounds were not fatal, and she was able to identify the appellant as the person who shot her and William Love.

State's Exhibit 3 was identified as a gun which was owned by the appellant. Ballistics' tests on Exhibit 3 disclosed that it was the gun which fired bullets that were recovered from the chest of the decedent, William Love.

Appellant first contends the trial court erred in over-ruling a motion for discharge because of the failure of the State to provide him a speedy trial as provided under the IND. RULES OF PROC., Rule CR. 4 (B) which reads as follows:

> "Defendant in jail—Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within fifty [50] judicial days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such fifty [50] judicial days because of the congestion of the court calendar. Provided, however, That in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule."

The record discloses that the indictment charging the appellant with first degree murder was returned by the Marion County Grand Jury on June 4, 1970, at a time when appellant was already in custody. On June 10 the appellant filed a motion for change of venue from the county alleging prejudicial pretrial publicity. Appellant claims in his brief that at that time three motions for an immediate and speedy trial were made. However, we find no reference to such motions in the record before us.

The court overruled appellant's motion for change to a county other than an adjoining county and ordered the appellant and the prosecuting attorney to strike. counties adjoining Marion County. The striking resulted in the choice of Johnson County, and on June 22, 1970, the cause was

docketed in the Johnson Circuit Court. On June 24 the Johnson Circuit Court set trial by jury for October 28, 1970.

On August 5, 1970, the appellant's attorney filed a handwritten motion for immediate trial wherein it is stated that it is a second such motion. However, we find no previous motion in the record. On August 5 the trial court set the cause for trial on September 4, 1970.

On August 14, 1970, the State filed a motion for a special change of venue in agreement with the earlier contentions of the appellant that the matter should be removed to a more distant venue because of the publicity in Marion County. The appellant represented by counsel joined in said motion. The motion was granted, and the venue changed to the Kosciusko Circuit Court where the cause was filed August 20, 1970.

On September 24, 1970, the appellant filed a motion for discharge for delay in trial under CR. 4. On October 6, 1970, the trial court overruled the motion for discharge, and the cause was set for trial November 15, 1970. The cause was thus tried, and the verdict of the jury rendered November 19, 1970.

Although the appellant contends that he had filed a motion for speedy trial prior to August 5, 1970, we find no such filing in this record. The only motion for speedy trial disclosed by this record was filed on August 5, 1970. Prior to the expiration of the fifty days within which the State had to bring the appellant to trial after August 5, the State filed its motion for special change of venue in which the appellant joined. The appellant does claim that he was not represented by his regular counsel at the time he joined in the change of venue and thus should not be held responsible for such change. However, the record discloses that the appellant was in fact represented by local counsel in Johnson County, and in view of the fact that appellant had previously asked to have the venue changed to a county not adjoining Marion and in view of the fact that the removal of the cause

from Johnson to Kosciusko County was calculated solely for the benefit of the appellant, it can hardly be said that local counsel acted contrary to appellant's best interest in agreeing to such change.

The appellant further claims that more than six months had expired from the time of his arrest until his trial, and that for that reason he should have been discharged. In so calculating, the appellant claims he was arrested March 16, 1970. This may well be true; however, the indictment in this cause under which the appellant stands convicted was not filed until June 4, 1970.

The pertinent portion of CR. 4 (A) reads as follows:

"No defendant shall be detained in jail on a charge, without a trial, for a continuous period embracing more than six [6] months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later) ;"

The date of the filing of the charge on June 4, being the later date, governs in this cause. Thus, it appears the time of incarceration of the appellant following the filing of the charge against him in this cause was actually less than five and one-half months.

We, therefore, find the appellant was not entitled to discharge by reason of delay in excess of six months.

Appellant also claims he was entitled to discharge fifty days after the filing of his motion for immediate trial on August 5, notwithstanding the fact the cause was subsequently venued to Kosciusko County in that more than fifty judicial days expired from the time the cause was docketed on August 20, 1970, in Kosciusko County and the date of appellant's trial, which actually began on the 16th day of November, 1970. However, the motion for immediate trial, which was filed in the Johnson Circuit Court on August 5, was promptly acted upon by that court and the trial set. Subsequent to that

time the appellant joined in a motion for change of venue to Kosciusko County, which was granted. When the cause arrived in Kosciusko County, the previous motion for speedy trial had served its purpose.

We find nothing in this record to indicate that the appellant ever filed a motion for immediate trial in the Kosciusko Circuit Court.

We, therefore, hold that when a motion has been made under CR. 4 (B), and the trial court has acted on that motion by setting a trial date, the motion will be deemed to have served its purpose. It is, therefore, necessary for the defendant to file a second motion for immediate trial in order to invoke his right under the rule when the trial setting obtained by the defendant must be continued due to his action. To hold otherwise would place the courts in an impossible position of a defendant being permitted to first file a motion for immediate trial, thereby acquiring a trial setting, causing a delay of that trial, then moving for discharge claiming expiration of time. To hold that a single filing of a motion for immediate trial prevails throughout the remainder of the cause, regardless of delay on the part of the defendant, would place the trial courts in a position of impossibility of compliance. See *State ex rel. Garvin* v. *Dearborn Circuit Court* (1972), 257 Ind. 631, 277 N. E. 2d 370, 29 Ind. Dec. 51.

We, therefore, hold that appellant was at no time entitled to a discharge because of delay in trial, See *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649.

Appellant next contends there was insufficient evidence to sustain a verdict on the issue as to whether the appellant's degree of intoxication was such as to render him incapable of forming the necessary intent to commit the crime of first degree murder. In support of this contention the appellant cites *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d

462, *Booher* v. *State* (1901), 156 Ind. 435, 60 N. E. 156 and *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882. In the *Yarber* case this Court specifically stated at page 618:

> "While evidence of intoxication is admissible and may be considered in behalf of a person on trial for a crime involving specific intent, it acts as a complete and ■ effective defense only when its degree is such as to render the accused incapable of entertaining the specific intent."

It is true that in the case at bar there is evidence that the appellant was intoxicated, however, the evidence clearly shows that he arrived at the White Castle Restaurant under his own power; that he asked for Flossie Crawley; that after arguing with her, he shot her, and then in turn shot William Love as he attempted to aid Flossie Crawley. He then returned to his place of employment, where he was arrested by police officers. After being advised of his constitutional rights by officers, he described the shooting of Miss Crawley and William Love. There is, therefore, evidence from which the jury was justified in finding that appellant was not so intoxicated at the time of the shooting that he could not form the required intent to commit first degree murder.

Appellant next claims that the trial court erred in overruling his motion to quash the indictment for the failure of the State to file the indictment in the Marion County Criminal Court. When the original transcript was filed in this cause, although it did contain a copy of the indictment and a certificate from the Marion County Clerk that the papers contained in the transcript were on file in his court, the indictment itself bore no Marion County file mark, and there was no order book entry showing its filing. However, the State petitioned this Court for and obtained a writ of certiorari to bring additional record to this Court. Pursuant to that writ, order book entries, which now appear at page 3-A of this record,

clearly show that the indictment was in fact filed in the Marion County Criminal Court. We, therefore, find no merit in appellant's contention in this regard.

Appellant claims the trial court erred in overruling the defendant's objection to the security measures taken with respect to the person of the defendant in the presence of the jury during his trial. The record discloses the trial court permitted the sheriff to place what is described as a hobble on the leg of the appellant. This hobble consisted of a weighted felt type wrapper, which prevented the appellant from moving rapidly. There is no showing in this record that there was any actual prejudice by reason of this so-called "hobble." In the case at bar the appellant was charged with the murder of one person, and there was evidence that he had shot and wounded another. While he had been held for trial in Johnson County, he had been transferred to the Indiana Reformatory for safekeeping. At the time counsel for the appellant asked that the device be removed from appellant's leg, his sole objection was that the device caused the appellant to "drag his leg," and "We feel this might be prejudicial to the defendant because the jury might think this man is a dangerous individual . . .," to which the court replied: "The court will now overrule and deny the request and would observe that such device is a reasonable security restraint, and we will now proceed." Although appellant cites several cases including *McPherson* v. *State* (1912), 178 Ind. 583, 99 N. E. 984 and *Hall* v. *State* (1928), 199 Ind. 592, 159 N. E. 420, which, while recognizing the court's right to exercise its discretion in permitting a prisoner to be shackled, contained dictum to the effect that to properly exercise discretion, there must be some evidence that there is danger of a possible attempt to escape. From the description of the manner of restraint used in this case and from the nature of the facts of which the trial court was cognizant, we cannot say that he exceeded his sound discretion in permitting the restraining device.

As was stated in *State* v. *Hashimoto* (1962), 46 Hawaii 183, 377 P. 2d 728, at page 734:

> ". . . It is a far fetched conjecture that jurors under oath would spontaneously harbor prejudice immediately upon seeing a defendant brought to court in manacles."

We hold under the circumtances of this case the trial court was within his sound discretion in permitting the restraint described.

The appellant next contends that the trial court erred in permitting the jury to make a determination as to the crime of first degree murder for the reason that there was insufficient evidence to show deliberation and premeditation on the part of the defendant. With this we cannot agree. The facts as previously recited in this opinion are sufficient upon which the jury could find that the appellant deliberately sought out Flossie Crawley and the decedent, William Love, while having a deadly weapon in his possession, and that he deliberately pointed the weapon at the decedent and shot and killed him. This Court has repeatedly held that intent to murder may be inferred from the use of a deadly weapon and the act of the killing. *Livingston* v. *State* (1972), 257 Ind. 620, 277 N. E. 2d 363, 28 Ind. Dec. 710; *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633. The evidence in this case clearly supports a finding that the appellant was the instigator of an unprovoked attack against Miss Crawley and the decedent. The trial court clearly did not err in permitting the question of first degree murder to go to the jury.

Appellant next claims the trial court erred in failing to procure competent psychiatric testimony regarding the mental capacity of the appellant. In the case at bar the defendant did move the trial court for an examination as to his mental capacity pursuant to BURNS' IND. STAT. ANN., 1972 Supp., § 9-1706a. Pursuant to that motion

the trial court appointed Dr. John E. Arford, who holds both A.B. and M.D. degrees from Indiana University, and Dr. Maria Solymos, who is a licensed M.D. with special training in psychiatry from the University of Budapest in Hungary. Appellant's counsel conducted a long cross-examination of both Dr. Arford and Dr. Solymos apparently attempting to establish incompetency on their part by asking a series of questions as to how they made their evaluation of the appellant. It is true that neither doctor performed many of the "tests" of which appellant's counsel inquired. However, it is also abundantly demonstrated by the testimony that both doctors were competent practitioners, and that they did in fact conduct examinations of the appellant and that from these examinations they were able to determine that he was competent to stand trial. This Court has previously held that it is not necessary for a medical doctor to have more training, experience and qualifications than a general practicing physician in order to be competent to testify as to an examined person's sanity. *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815, 14 Ind. Dec. 333. Under the authority of the *Tyler* case, the doctors who testified in this case were qualified to give their expert opinions. We find no reversible error in letting them so testify.

Appellant next claims that appellant's rights were violated in that he was identified by a one-on-one confrontation without the benefit of a proper police lineup. John C. Nash, who had witnessed the shooting at the restaurant, was taken by the police to General Hospital in Indianapolis where he identified the appellant as the assailant of Miss Crawley and the decedent. In the case at bar the Witness Nash independently made a court room identification of the appellant during his trial. In addition, the appellant had been identified by Miss Crawley, who was a person who had known him for a period of time. Another witness, Arnold Gibson, testified that he was in the White Castle Restaurant at the time of the shooting and observed the appellant shoot

both Miss Crawley and William Love. This Court has determined that where there is sufficient independent evidence introduced relating to the identity of the appellant, any possible error in pretrial identification becomes harmless. *Langley* v. *State* (1971), 256 Ind. 199, 267 N. E. 2d 538, 25 Ind. Dec. 118.

Defendant lastly claims that he was denied a **fair trial** because of adverse pretrial publicity. In support of this proposition the appellant cites *Estes* v. *Texas* (1965), 381 U.S. 532, 85 S. Ct. 1628, 14 LEd. 2d 543 and *Sheppard* v. *Maxwell* (1966), 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600.

It is true the cases cited by appellant, and many other cases decided in this and other jurisdictions, have held that pretrial publicity may be of such a nature as to make a fair trial impossible in a given location. It was pursuant to this very authority that the Judge in the Johnson Circuit Court granted the joint petition of the State and the appellant to transfer this case to Kosciusko County, a county which is in excess of 100 miles north of Marion County, where the alleged adverse publicity occurred. In appellant's brief he makes no specific allegations of prejudice occurring in Kosciusko County nor do we in searching this record find any evidence of adverse publicity which would indicate that Kosciusko County was a venue in which the appellant could not receive a fair trial. This Court has previously held that the rule involved requires much more than a mere speculation that prior publicity had prejudiced the appellant in the county where the trial took place. There must be a showing that the jurors who heard the evidence had actually been subjected to such publication. *Harris* v. *State* (1968), 249 Ind. 681, 231 N. E. 2d 800, 12 Ind. Dec. 279. Appellant's general speculation in this regard is not sufficient to warrant a reversal of this case.

The trial court is in all things affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., not participating.

NOTE.—Reported in 290 N. E. 2d 38.