DAVID CARY RUBY *v.* STATE OF INDIANA.

[No. 1-875A141. Filed February 10, 1976.]

---

*Mark Peden, Foley, Foley and Peden,* of Martinsville, for appellant.

*Theodore L. Sendak,* Attorney General *Walter F. Lockhart,* Deputy Attorney General, for appellee.

STATEMENT OF CHARGES AND PRELIMINARY PLEADINGS

PER CURIAM—Defendant-appellant, David Cary Rudy (Rudy) was charged by information on August 8, 1974, with second degree burglary of a Texaco station. After the filing of an array of pleadings Rudy did, on October 25, 1974, file his Motion in Limine which was set for hearing on November 7, 1974, and was then on the date set continued to November 8, 1974. This was followed by more pleadings including a petition for Rudy's attorney to withdraw being filed on January 6, 1975.

On January 6, 1975, the court sustained Rudy's Motion in Limine in part and overruled the same in part.

The above was followed by the filing of many more pleadings including the appointment of new counsel for Rudy and

the resetting of the cause for trial by jury on February 4, 1975. This trial date was later vacated and the cause reset for January 29, 1975.

## FACTS OF THE CASE

Rudy had picked up a Daniel Cottrell and Peter Azar in Albuquerque. Defendant was driving a 1969 Ford Galaxie when he pulled into a Texaco station in Little Point, Indiana. The Ford would not run and was pushed behind the Texaco station where the three men remained all night.

The next day at about 4:00 P.M. the trio had the car in Plainfield at the Joe Knop Ford Agency where they were told they could not get the car repaired that day.

Rudy and Cottrell then purchased beer which they consumed, after which they returned to the Knop Ford Agency and after a discussion between the three they broke out a window and all entered the agency. Azar took a tape player and Rudy drove a 1973 LTD, blue with black top, out the front door. The three stopped at the 1969 Ford and Azar and Rudy transferred their belongings to the Ford. They then went back to the Texaco station at Little Point which was still open, so they went to Eminence to a pool hall. At one point their LTD slid off the road and had to be pulled out by a truck.

The trio returned to the Texaco station which was then closed and they broke into the same and were observed there assembling cigarettes and food by Deputy Beaver.

All three fled to a nearby corncrib and hid under it but were soon arrested. After the arrest Rudy was observed to have a hole cut in his hand and was bleeding. There was blood on a pile of groceries near the front door of the station and on the inside door handle. A rear glass door or window of the Texaco station had been kicked in.

Items stolen from Knop Ford Sales were found inside the stolen L.T.D.

## ISSUES PRESENTED

Rudy has presented four issues which we shall pass upon. The issue will be outlined when discussed. Issues 2 and 3 will be grouped and treated as one under Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Issue One is that the evidence was insufficient to sustain the conviction because of the failure of positive identification of Rudy in court by the chief prosecuting witness, co-defendant Cottrell.

Defendant charges that co-defendant Cottrell referred to Rudy as "Mr. Rudy" in open court; that there was no in-court identification of Rudy; that at no time did the Prosecutor ask witness Cottrell if Rudy was present in the court room; and that Cottrell failed to point Rudy out.

In this case Robert Sparks, owner of the Texaco station, arrived at his station immediately after the three men were arrested.

In open court the following questions and answers of Mr. Sparks are as follows, to-wit:

"Q. Let me direct your attention to David Rudy. Was he one of the gentlemen who was there?
A. Yes, he was one . . .
Q. Would you point him out to the jury please?
A. Right here.
Q. Okay, in the green sweater?
A. Umhum. He did have a ponytail."

Richard Lyons, a Deputy Sheriff of Hendricks County, testified he found the three men hiding under the corn crib. He stated ". . . The two subjects in court here at that time did come out from under the building." Mr. Lyons was then asked "Okay, and who are you referring to?" His answer was "I'm referring to Mr. Cottrell directly behind you and Mr. Rudy, the defendant in this case."

The following statements were made by the prosecutor and court respectively:

By Mr. Harris: "Your Honor, let the record show that the witness has identified defendant David Rudy and witness, Daniel Cottrell."

By the Court: "The record will so show, that the witness has pointed out the two persons named."

The record here speaks for itself and shows conclusively that there was not only an identification of defendant but an in-court identification. In *Preston* v. *State* (1972), 259 Ind. 353, 287 N.E.2d 347, 348, Justice Hunter stated:

". . . It is true that no witness *pointed* to the appellant at trial and said, 'that is the man.' However, at least three witnesses referred to the 'defendant' as being the person at the shopping center who committed the crime. . . ." (Original emphasis.)

In *Preston, supra,* the court in quoting from *State* v. *Schroeppel* (1959), 240 Ind. 185, 187, 162 N.E.2d 683, 684, stated "It is also well settled a defendant may be identified by name."

Further, in the case at bar other witnesses referred to Rudy as the defendant, which is also one of the ways Rudy was identified by a co-defendant. See also, *Stevenson* v. *State* (1974), 162 Ind. App. 222, 318 N.E.2d 573 at 576. It is not necessary that a co-defendant identify the defendant by certain words or by pointing him out in open court.

The second issue is that Rudy's Motion in Limine should have been sustained so as to exclude evidence of other crimes alleged to have been committed by defendant previously on the same day.

The third issue is whether the evidence of other alleged crimes committed by defendant on the same day should have been admitted against Rudy at the trial of the cause.

The trial court, after hearing many witnesses on Rudy's Motion in Limine ruled for Rudy in that he ordered that

nothing be said about criminal proceedings then pending against Rudy in the Hendricks Circuit Court for theft of the 1973 Ford LTD. He also ruled that the theft of the LTD Ford was a link in the chain of evidence in the case at bar, as it was found at the scene of the offense charged herein rather than the older Ford automobile previously seen by witnesses as occupied or used by defendant earlier which older Ford was found at the scene of the other alleged offense in Plainfield. The court further determined any prejudicial effect of this ruling could be cared for in final instructions.

While proof of collateral crimes is generally inadmissible, *Perkins* v. *State* (1934), 207 Ind. 119, 191 N.E. 136, our Supreme Court, in the case of *Fehlman* v. *State* (1928), 199 Ind. 746, 161 N.E. 8, 10, said:

"It was evidence of a collateral crime and inadmissible unless it can be said to be within an exception to the general rule. Absolute necessity for the admission of such evidence creates the exception, . . ."

The trial court was confronted with evidence of Rudy being in an old model Ford on one day and when arrested the next day he had a 1973 Ford LTD. It was proper to admit evidence as to the manner or reason for the exchange of cars in order that the jury could know all the facts of the transaction of the offense for which Rudy was being tried.

It is our opinion that the trial court properly admitted the evidence as to the alleged crime at Joe Knop Ford and correctly ruled on the Motion in Limine.

The fourth specification of error is that the court erred in refusing to sustain Rudy's Motion to Dismiss which charged the violation of Rudy's right to an early trial and lack of probable cause.

Rudy's Motion to Dismiss was filed January 28, 1975. He has been arraigned August 26, 1974 and on August 29, 1974 filed his motion for early trial, which was set for October

15, 1974. On October 11, 1974, Rudy requested a continuance of the trial and now contends that at that point the time stopped running on his motion for early trial. The cause was reassigned for trial at that time.

On October 25, 1974 Rudy filed a Motion in Limine which was set for November 7, 1974 and was heard on November 7th or 8th of that year. It was not ruled upon until January 6, 1975, and was then sustained in part and denied in part.

On January 15, 1975, trial by jury was set for February 3, 1975, and the trial date was later vacated and the trial reset for January 29th, 1975. Rudy filed his Motion to Dismiss on January 28, 1975, which motion was overruled by the court and the trial commenced on January 29th.

Rudy urges that more than 44 days transpired from August 29, 1974, the date of filing the motion for early trial, until October 11, 1974, when defendant requested continuance of trial for purpose of filing a Motion in Limine, which was filed on October 25, 1974. Defendant further urges that the time period from October 11, 1974 to January 6, 1975 when the Motion in Limine was ruled on should not be charged to defendant as his own act of delay of trial.

> Our Supreme Court, in *Shack* v. *State* (1972), 259 Ind. 450, 288 N.E.2d 155, held that a delay attributable to defendant runs from the time the motion is filed until the time the judge rules on the motion.

Rudy now contends that the long delay in the court's ruling on the Motion in Limine is an unreasonable delay which cannot be attributable to Rudy.

We are unable to determine that the State can be charged with any of the time lost in the delay occasioned by the filing of a motion by the defendant. Therefore, we now hold that the State is not chargeable with any of the delay occasioned by the filing of the Motion in Limine.

Ind. Rules of Procedure, Trial Rule 53.1 (A) provides that the court shall hear motions without delay and rule promptly

after hearing thereof or after they are filed when no hearing is required or granted. Upon failure of a court to enter ruling upon a motion within thity days after it was heard or thirty days after it was filed (except ruling upon a motion to correct errors) the submission of such motion may be withdrawn, and the judge before whom the cause is pending may be disqualified therein; in such event, the case shall be transferred to a judge to be appointed by the Supreme Court, except where

(1) The judge rules upon such motion and the record of such ruling is duly made prior to any action being taken under the provisions of subdivision (B) of Rule 53.1; or

(2) The court within thirty days after the motion is filed, orders that it be disposed of at the trial on the merits; or

(3 The parties have appeared or their counsel by stipulation or agreement entered of record agree otherwise; or

(4) The time for ruling thereon is, upon application of the judge as provided in TR. 53.1(C) extended by the Supreme Court.

In order for Rudy to have saved his record so that he could rely on his motion for an early trial it was incumbent upon him to file a renewal motion for early trial.

In *Cody* v. *State* (1972), 259 Ind. 570, 290 N.E.2d 38, our Supreme Court stated in reference to the necessity for a second early trial motion:

"We, therefore, hold that when a motion has been made under CR. 4(B), and the trial court has acted on that motion by setting a trial date, the motion will be deemed to have served its purpose. It is, therefore, necessary for the defendant to file a second motion for immediate trial in order to invoke his right under the rule when the trial setting obtained by the defendant must be continued due to his action. To hold otherwise would place the courts in an impossible position of a defendant being permitted to first file a motion for immediate trial, thereby acquiring a trial

setting, causing a delay of that trial, then moving for discharge claiming expiration of time. To hold that a single filing of a motion for immediate trial prevails throughout the remainder of the cause, regardless of delay on the part of the defendant, would place the trial courts in a position of impossibility of compliance. . . ." 290 N.E.2d at 41, 42.

Rudy's failure to comply with CR. 4(B) and his failure to file his second motion for an early trial waived his right to an early trial and he cannot now be heard to complain. Further, Rudy admits at page 17 of his brief that the second count of the Motion to Dismiss, based upon a defective probable cause affidavit, "is hereby waived as error on appeal, due to the holdings of this Court in *Rector* v. *State* (1971), 256 Ind. 634, 271 N.E.2d 452, and *Ervin* v. *State* (1972), [154] Ind. App. [89], 289 N.E.2d 131."

Judgment affirmed.

NOTE.—Reported at 341 N.E.2d 516.