William O'Neal GRAHAM, Appellant,

v.

STATE of Indiana, Appellee.

No. 1078S201.

Supreme Court of Indiana.

Sept. 6, 1979.

Eric C. Jodka, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Michael G. Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Graham was tried by jury and convicted of first degree murder and imprisoned in the State Prison during life. He was charged by indictment with having killed one Charles Caplin in the commission of a robbery of Caplin in the Lichtenburg Department Store in Indianapolis in violation of Ind.Code § 35–13–4–1, repealed effective October 1, 1977. On appeal Graham contends that (1) the evidence was insufficient to sustain the verdict of guilty, and that (2) the trial court erred in overruling his motion to discharge for delay in trial.

Brodley, a salesclerk at Lichtenburg's, testified that she and another clerk, Laswell, were changing a display in the front window of the store shortly after the store opened in the morning when she saw appellant enter the store together with two other men later identified as Robert and Anthony Owens. Robert Owens was waited on by Brodley and sought to buy some clothing he selected with a hundred dollar bill. She showed the bill to the owner of the store, Mr. Caplin, who was standing nearby who then put it in a file cabinet and told her to give the change for it. Owens then produced a weapon and shot Mr. Caplin in the

back of the head from behind, and ordered Brodley to get on the floor saying that he was a gangster from Detroit and that she should not identify him or he would get her family. The witness then heard money rattling on the counter and at the cash register.

Laswell testified that she observed appellant and Robert Owens enter the store and proceed to the men's department in the middle part of the store. Brodley waited on Owens and she waited on appellant. He asked to try on a pair of pants, but did not do so. Appellant did not seem particularly interested in the pants she showed him. She heard the shot that killed Mr. Caplin and then Anthony Owens moved to her, put a gun to her head, and ordered her to the floor. She then heard money rattling at the cash register. Then another male customer entered the store and was ordered to the floor next to her. A female customer entered the store and was made to lie down. When she got up off the floor the three of them were gone.

Appellant gave a confession to the police following his arrest for the crime. In the statement appellant admitted participating in the robbery and acting as the look-out man. He stated that Robert and Anthony Owens came to his house in a car and asked him if he wanted to make some money, and he responded, yes. He gave one of them a pistol he was keeping for them. They then drove to the department store and on the way he was told that they were going to rob the store. They parked in the rear of the store and left the car motor running. After they entered and the shot was fired appellant took around $30 from a front cash register and received a total of $100 for his part in the crime.

■ In the case at hand, appellant was convicted of first degree felony murder, the felony being robbery. In support of the allegation that the evidence was not sufficient appellant argues that the evidence did not show that he had the intent to perpetrate or attempt to perpetrate a robbery. When reviewing a conviction we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if from that viewpoint there is substantial evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657; *Buckner v. State,* (1969) 252 Ind. 379, 248 N.E.2d 348. Appellant contends that the evidence did not show that he was a knowing, voluntary participant in the robbery.

■ In his oral testimony appellant defended himself by stating that he did not know of the plan to rob until he was told of it by Anthony Owens while in the store, and that he removed money from a second cash register after the shooting only after Anthony Owens made a threatening gesture to him with a gun indicating that he should do so. He further testified that after the robbery he took a cut of $100 from the stolen money only out of fear engendered by the statement of Robert Owens that he should do so and thereby become involved in the crime so as to prevent him from talking about it. In essence appellant gave direct testimony under oath from the witness stand that he was ignorant of the plan to rob until the plan was actually being executed and that he cooperated in it as a captive of the Owens brothers. However, not to be overlooked here on appeal is the other evidence presented to the jury in the form of appellant's prior written confession and the in-court testimony of the State's witnesses. The jury was informed in this body of evidence that appellant knew for example that his companions were armed. He knew that when they went in the store the motor to the car had been left running. He knew that he would serve in this excursion as a look-out and that he would make some money for his efforts. He entered the store with them and he left with them. He took money from a cash register in the store. The jury was warranted in according this body of evidence greater weight then appellant's exculpatory oral testimony at trial, and in further inferring beyond a

reasonable doubt that appellant knew of the plan to rob before it was executed; that he voluntarily chose to participate in it; and that he, therefore, had the requisite intent to rob. To be sure there are direct statements, inferences and circumstances surrounding the written and oral testimony which cast these events in another light; however, in the jury there is reposed the duty to weigh and judge the evidence and the credibility of witnesses including that of appellant himself and to choose between these two contradictory versions of the events. There are few duties placed upon citizens which have an equal import for the fate of another human being or the community. Upon review we find the evidence sufficient to warrant the verdict of guilty.

■ We now turn to the second issue presented. On January 7, 1974, appellant requested an early trial pursuant to Ind.R. Crim.P. 4(B) for the second time. At the time of this request the rule provided that a criminal defendant should be discharged if not brought to trial within fifty judicial days thereafter. The fifty day period commenced by this second request would have expired about March 17, 1974. On January 16, 1974, the trial court set the case for trial on April 8, 1974, clearly beyond the said fifty judicial day period. More than a year after these events, on April 11, 1975, appellant filed a motion for discharge predicated upon his January 7, 1974 request. He now contends that the denial of such motion was error, and focuses on and relies expressly upon the delay in trial from January 7, 1974 to April 2, 1974.

Caselaw applying Criminal Rule 4(B) places a burden upon a criminal defendant to voice an objection when first learning of trial setting made in response to an early trial request where such trial setting orders the actual trial to commence beyond the time limit imposed by the rule. *Utterback v. State*, (1974) 261 Ind. 685, 310 N.E.2d 552; *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213. Where knowledge of the setting and an opportunity to protest existed during the time period initiated by the request, and no protest is made, an actual acquiescence in the trial date is shown, and a later motion to discharge predicated upon the precedent early trial request is properly denied. When such a setting is known, and no protest is made, and the early trial request has completed its serve and no longer remains viable. *Cody v. State*, (1975) 259 Ind. 570, 290 N.E.2d 38.

The record before us reflects that appellant was aware of the fact that an early trial request was made on his behalf on January 7, 1974, and that the fifty-judicial-day time limitation for trial would expire about the following March 17th. Appellant testified at the hearing on the motion to discharge predicated on such early trial request that he learned of the April 8 setting sometime in the month of March. The record further reflects that appellant appeared in person and by counsel before the trial court on the intervening date of March 8, 1974, and that on such occasion witnesses were sworn and evidence heard upon a separate motion for discharge for delay in trial predicated upon his first early trial request made sometime in 1973. That hearing produced no objection to the April 8 trial setting by appellant or his counsel. At the time of that hearing the fifty judicial day period had not yet expired. The general subject under consideration at that hearing was appellant's right to an early trial under the first request and that inquiry would have required a critical examination of the court's entries including the January 16 entry setting the April 8 trial date. The March 8 hearing denotes attorney-client contact and attention to trial settings existing at the time. The fact that it took place is in direct contradiction to appellant's testimony at the hearing resulting in the denial of discharge challenged here that he had no personal contact with his lawyer from January 7, 1974 until after April 2, 1974.

Appellant's admission when taken in conjunction with the record reflection of the March 8 hearing provides a basis upon which the trial court could reasonably infer that appellant knew of the April 8 trial date on the date of that hearing; that such hearing provided an opportunity for him to

act upon such knowledge by voicing a protest; and that he did not avail himself of this opportunity and thereby acquiesced in the trial date. As a result of this resolution it is not necessary to touch upon appellant's claim based upon his assertion that his counsel alone had knowledge of the April 8 trial setting and that therefore the knowledge requirement for acquiescence was not demonstrated.

The denial of discharge is therefore sustained as is the conviction.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.