## FEHLMAN ET AL v. STATE OF INDIANA.

[No. 25,161.   Filed April 17, 1928.]

1. EVIDENCE.—The rules of evidence do not permit an inference to be based on another inference.   p. 752.

2. CRIMINAL LAW.—*Evidence as to articles found in home of one of two defendants charged with burglary held inadmissible.*—In a prosecution of two persons for burglary of a dwelling house (§2446 Burns 1926) the admission of evidence pertaining to articles found in a search of the home of one of them, which she might have purloined from the home that was burglarized prior to the burglary, was error, as such evidence unquestionably had reference to the commission of an entirely separate and distinct offense from that for which the defendants were on trial.   p. 753.

3. CRIMINAL LAW.—*Admissibility of evidence of another crime.*— Absolute necessity for the admission of evidence of another separate crime creates the exception to the rule against the admissibility thereof, and, unless such necessity is shown, the admission of such evidence is error.   p. 753.

4. CRIMINAL LAW.—*Instruction authorizing jury to consider evidence of another crime held erroneous.*—Where evidence relative to another crime was erroneously admitted, an instruction that such evidence was not admitted to prove directly the crime charged, but that it could be considered by the jury in connection with all the other evidence in determining the intent of the defendants, the weight and credibility of their testimony, and whether the crime with which they were charged, if committed, was or was not a part of a criminal program or system, was erroneous when there was no evidence tending to show any connection between the two crimes.   p. 753.

5. CRIMINAL LAW.—*Connection between crime charged and collateral crime proved must be shown.*—In order to make evidence of a collateral crime admissible, the connection between it and the crime charged must be shown by the evidence.   p. 753.

6. CRIMINAL LAW.—*Connection between crime charged and collateral crime question for the court.*—Whether there is such connection between a collateral crime proposed to be proved and the crime for which the defendant is being tried so as to make evidence of the collateral crime admissible is a question for the court.   p. 753.

7. CRIMINAL LAW.—Refusal of requested instructions not error when the same subject was fully covered by an instruction given.   p. 754.

8. CRIMINAL LAW.—The burden of proof never shifts to the defendant in a criminal prosecution.   p. 755.

9. CRIMINAL LAW.—*Refusal to give correct instruction as to burden of proof was not error when court gave full instructions as to burden of proof and presumption of innocence.*—In a criminal prosecution, it

was not error to refuse to give a requested instruction that the burden of proof never shifts to the defendant where the court fully instructed the jury relative to the state having the burden of proving the defendants, or one of them, guilty of the crime charged, and as to the presumption that a defendant charged with crime is innocent until proved guilty beyond a reasonable doubt.  p. 755.

10.  CRIMINAL LAW.—*Repetition of propositions of law in instructions.*— A trial court, although requested so to do, is not justified in emphasizing any particular phase of the case on trial by repeating propositions of law in instructions, however applicable the propositions may be.  p. 755.

11.  CRIMINAL LAW.—*Refusal to give requested instruction not error when not clearly drawn.*—Unless a requested instruction is drawn with that care and clearness that will likely obviate a misunderstanding of its purpose, there is no error in refusing to give it.  p. 755.

12.  CRIMINAL LAW.—*Defendant entitled to instruction that each juror must be satisfied that each essential element of the crime has been proved beyond a reasonable doubt.*—In a criminal prosecution, a defendant is entitled to a complete and specific instruction informing each individual juror that he must be satisfied from the evidence that each essential element of the crime with which the defendant is charged has been proved beyond a reasonable doubt before consenting to a finding of guilty.  p. 755.

13.  CRIMINAL LAW.—*Injection into burglary case of irrelevant issue as to larceny requires reversal.*—In a prosecution of two persons for burglary of a dwelling house (§2446 Burns 1926), where evidence was admitted tending to show that one of them had been guilty of larceny of articles in the home burglarized, and such defendant proffered testimony that such articles were given to her, thus injecting into the case on trial an issue which was irrelevant, the judgment of conviction must be reversed.  p. 757.

14.  CRIMINAL LAW.—*Evidence that one of two defendants charged with burglary had committed larceny at another time inadmissible on theory that defendants' intent was equivocal.*—In a prosecution of two persons for burglary of a dwelling house (§2446 Burns 1926), evidence that one of them had purloined articles from the same house while working there was not admissible on the theory that the intent of the defendants in committing the burglary was equivocal.  p. 757.

From Newton Circuit Court; *George A. Williams,* Judge.

Gerald Fehlman and Jennie Miller were convicted of burglary in the first degree (§2446 Burns 1926), and they appeal.  *Reversed.*

*Charles M. Snyder, Ray R. Cummings, James C. Murphy* and *Hanley & Hanley,* for appellants.

*Arthur L. Gilliom,* Attorney-General and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

MYERS, J.—Appellants, by an amended affidavit, were charged with burglary in the first degree. §2446 Burns 1926. Trial before a jury and verdict of guilty as charged in the affidavit. On this verdict the court rendered judgment against each of the appellants.

The overruling of appellants' several motion for a new trial is the only error relied on for a reversal of the judgment. The causes assigned in support of this motion and not waived challenge the court's rulings in refusing to give certain of their tendered instructions; the giving of an instruction by the court upon its own motion; the refusal to admit and in admitting certain testimony.

A brief statement of this case, as it appears from the evidence, may assist in a better understanding of the questions presented and their disposition. On June 16, 1924, in the nighttime, the farm dwelling house of Jennie M. Conrad, situate about thirty rods from the village of Conrad, Indiana, and in which she then resided, was burglarized and a quantity of jewelry, currency and travelers' checks belonging to Mrs. Conrad and by her kept in a dresser drawer in her bed room was taken and carried away. At that time, appellant Miller, with her husband, Joe Miller, resided on a farm about eight miles from the Conrad home. Mr. Miller, during the years 1922 and 1923, was employed continuously by Mrs. Conrad in promoting her farm interests. During the week, he usually lodged at the tenant quarters and would go home each week end. His wife, this appellant, two or three days each week from the last of July, 1923, until about the first of February, 1924, did housework for

Mrs. Conrad, going and returning to her own home each, day. Alfred Caul, in the spring of 1923 and until about February 1, 1924, when he left for Hammond, Indiana, made his home with the Millers and during part of which time he assisted Mrs. Miller in the care of horses, cattle and hogs for his board. Caul, while living at the Miller home, was at Conrad's a "few times" and did some work there. At Hammond, he obtained employment, but soon thereafter he was arrested, pleaded guilty to a larceny charge, sentenced to pay a fine and to be imprisoned for 160 days, which sentence was suspended.

A short time after Caul left the Millers, they employed appellant Gerald Fehlman, who remained with them several months after the alleged burglary. On October 13, 1924, Caul returned to the Miller home and, finding no one there, entered the house, took a revolver, a $100 Liberty bond, $87 in money, a white sapphire ring, two checks, one given to Mrs. Miller by her husband and one to her by a Mr. Beagley, a key to a Ford machine, a safety box key, and left a note of warning. That night Mrs. Miller and Fehlman went to Hammond, notified the police of the robbery and then returned home. Three days later, October 16, Caul was arrested, and on the next day he was given into the custody of the sheriff of Newton county. He escaped from the Newton county jail, but was recaptured and rejailed. Originally, Caul and these appellants were jointly charged by affidavit with the Conrad burglary. That affidavit was dismissed, and on October 12, 1925, appellants alone were, by affidavit, charged with that offense. On November 2, 1925, the latter affidavit was amended, and trial thereon was had January 20, 1926. Caul, then under an arson charge and at liberty on his own recognizance, was the principal witness for the state, and testified that on Saturday before June 16, 1924, he was at the Miller home and the question of robbing Mrs. Con-

rad of her money and jewelry was discussed by the witness, Mrs. Miller and Fehlman. Mrs. Miller told where the Conrad property was kept and how it could be gotten. It was then agreed that the witness and Fehlman should attempt to get it, and whatever was obtained should be divided one-third to each of the three. Further testifying, he said that, on the night of the Conrad burglary, he and Fehlman left the Miller home, walked to Enos, Indiana, took a freight train to Conrad and then walked to near the home of Mrs. Conrad, where they waited until she retired. They then obtained some gasoline, poured it on the ground at the rear of the house and "set it afire" for the purpose of attracting the attention of Mrs. Conrad. Failing in this, they followed Mrs. Miller's suggestion to catch a chicken and "make it squawk," which they did, and Mrs. Conrad came out at a rear door. They then hurried to the front of the house, cut the front door screen, opened it and the door, both entered, followed Mrs. Miller's instructions, located the dresser in which the money and jewelry were kept, and from which the witness took the articles and gave them to Fehlman. When Mrs. Conrad came in at the rear of the house, they both went out at the front and then to the station at Conrad, where they divided the booty, two-thirds to Fehlman, and the witness one-third, who took a freight train from there to Hammond. The articles taken by the witness as his share were four rings, travelers' checks, a watch, diamond broach and part of the currency. At Hammond, he cashed one of the traveler's checks, sold the rings and lost the broach, and the "rest of the checks and the watch they (officers) got." The Newton county sheriff testified that he received from the Hammond police a revolver, a ring, money and a $100 Liberty bond.

There was no evidence on the part of the Hammond police showing what property they received by means of

a search of Caul's person or the premises occupied by him. Mrs. Miller testified that she did not see the officers at Hammond search Caul, but, immediately thereafter, they exhibited to her $68.35 in money, together with the articles of property stolen from her by Caul, which included the white sapphire ring. The checks Caul said he had destroyed. The articles in the possession of the Newton county sheriff were exhibited to Mrs. Miller and identified by her at the trial as her property except the ring and money. She disclaimed any previous knowledge of "that ring." The key to the machine and safety box key had previously been given to her.

In October, 1924, on information given by Caul after his arrest, the Miller home was searched and the officers took possession of a bed-spread, napkins, pillow cases, bath towels, ribbon, Bible, carving set, old blanket and part of a bolt of linen. It conclusively appears that these articles were in the Miller home long prior to the Conrad burglary. Whether they were brought to the Miller home before or at the time or after Caul worked for Mrs. Conrad, or when he was otherwise at her house, is not determinable from the evidence. Mrs. Miller testified that Caul, a week or two before Christmas, 1923, while living at her home, brought them there, saying that his mother had given them to him. He placed most of them in a trunk at the head of the stairs, and the others were in use about the house when the officers came. When Caul came to her house, it was the understanding between Mr. Miller and him that he was to assist in the care of the stock and do chores for his board. While making his home at her house, he worked for short periods of time for neighbor farmers, but when not so employed, he would come and go, saying he was looking for work and that he would pay board for this

time, which he did not do, but promised to give the bed-spread in payment.

Mrs. Conrad testified that she lost no jewelry prior to the night of the burglary, and that the rings taken were all diamond rings, and that the one in the possession of the sheriff shown her at the trial was one of the rings stolen from her. The watch had been returned and the issuing company had paid her for the travelers' checks. She identified the spread, napkins, linen, blanket, Bible and carving set as her property, but did not know when they were taken from her home, as "each one was in a different place in my house from top to bottom." Both of these appellants unqualifiedly denied Caul's testimony in every particular pertaining to the Conrad burglary.

It must be kept in mind that appellants were charged, tried and convicted of the offense of burglary. During the trial, over the objection of these appellants,

1.  evidence was introduced tending to show that one of these appellants, Mrs. Miller, had purloined a bed-spread, napkins and other articles belonging to Mrs. Conrad more than five months prior to the time of the alleged burglary. There was no evidence whatever connecting appellant Fehlman with the commission of any crime other than as Caul had coupled him with the burglary. It will be noticed that within a few days after Mrs. Miller caused Caul's arrest for burglarizing her home, an official search of her premises was made and not a single article taken from Mrs. Conrad by means of the burglary was found. It may be said that one of the rings belonging to Mrs. Conrad, and by the officers obtained from Caul and exhibited at the trial of these appellants, was, by Caul, stolen from Mrs. Miller. There is no evidence to that effect unless such inference may be legally drawn from the testimony of Caul that he had sold all of the rings he received on account of the

burglary, further supported by an inference without evidence justifying it, that the officers at Hammond obtained from Caul only such articles as he had stolen from Mrs. Miller and that the ring in evidence was one of them. The tracing of the burglariously stolen ring into the possession of Mrs. Miller is largely, if not wholly, a matter of speculation, or at most, such thought must result from an inference based upon another inference, which the rules of evidence do not permit. *Warner* v. *Marshall* (1905), 166 Ind. 88, 117, 118, 75 N. E. 582; *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 6, 108 N. E. 158.

From the foregoing conclusion, it follows that the evidence pertaining to the articles recovered by means of the search unquestionably had reference to the commission of an entirely separate and distinct offense from that for which these appellants were being tried. It was evidence of a collateral crime and inadmissible unless it can be said to be within an exception to the general rule. Absolute necessity for the admission of such evidence creates the exception, and there was no showing of such necessity. *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235; Underhill, Criminal Evidence (3d ed.) ch. 15, §§150, *et seq.*

Instruction No. 4 given by the court upon its own motion, over the objection and exception of appellants, told the jury, in effect, that while evidence tending to prove a collateral crime had been admitted, its purpose was not to prove directly the commission of the crime charged, but that it "may be considered by you in connection with all the other evidence in the case relative thereto, if any, in determining the purpose and intent of the defendants, the weight and credibility of their testimony, their motive and good or bad faith, and whether or not the alleged burglary, if

committed, was or was not a part of a criminal program or system." If the evidence to which this instruction had reference was erroneously admitted because not within the range and scope of the offense charged, it necessarily follows that an instruction authorizing the jury to consider it for any purpose would be erroneous, and more so because it suggested to the jury the thought of "a criminal program or system," when there was no evidence tending to show common features or any connection whatever between the larceny and burglary. The instant case did not call for evidence to negative innocent intent or accident nor was the evidence of the collateral crime inseparable from the act charged. *Underhill* v. *State* (1916), 185 Ind. 587, 114 N. E. 88; *Turner* v. *State* (1885), 102 Ind. 425, 1 N. E. 869; Underhill, Crim. Ev. (3d ed.) §154; 1 Wigmore, Evidence, (2d ed.) §218. As said by Underhill, "The connection must appear from the evidence. Whether any connection exists is a judicial question." Underhill, Crim. Ev. (3d ed.) p. 199, §152.

Of the twenty-four separately-numbered instructions tendered by appellants, the court gave fifteen. Each of the nine instructions refused is here urged by each

7.   of the appellants in support of their motion for a new trial. Following the order of their presentation, No. 3 cautioned the jury on the reception of testimony of an accomplice. That point was fully covered by No. 4 tendered by appellants and given, wherein the jury was told "that a person accused of a crime may be convicted upon the uncorroborated testimony of an accomplice, still a jury should always act upon such testimony with great care and caution, and subject it to careful examination in the light of all other evidence in the case, and the jury ought not to convict upon such testimony alone, unless after a careful examination of such testimony you are satisfied beyond a

reasonable doubt of its truth and that you can safely rely upon it."

Instruction No. 7 refused correctly declared that "the burden of proof never shifts to the defendant." We see nothing seriously wrong with this instruction, and 8, 9. it should have been given were it not for the two instructions immediately preceding it, which unmistakably placed the burden on the state of proving the appellants or one of them guilty as charged beyond a reasonable doubt. The jury, in addition, was told that the defendants were not required to introduce any evidence as to their innocence, because the law presumes every defendant charged with a crime to be innocent until proved guilty beyond a reasonable doubt, and that this presumption abides with the defendants throughout the trial and until, from the evidence, the contrary appears beyond a reasonable doubt.

Instructions Nos. 10, 14 and 16 refused were on the subject of proof of guilt of one or both of the defendants beyond all reasonable doubt and to the exclusion 10. of every reasonable hypothesis of innocence. No. 15 tendered and given was on the same subject and sufficiently advised the jury concerning its duties in that regard. A trial court, although requested so to do, is not required, nor would it be justified in emphasizing any particular phase of a case by repeating propositions of law, however applicable thereto they may be. *Zimmerman* v. *State, supra; Robbins, Exr.,* v. *Fugit* (1920), 189 Ind. 165, 126 N. E. 321; *Louisville, etc., Traction Co.* v. *Miller* (1924), 82 Ind. App. 344, 142 N. E. 410.

Nos. 17 and 18 refused were substantially alike, and were intended to warn each individual juror to be satisfied beyond a reasonable doubt of the truth of 11, 12. each material allegation of the affidavit before consenting to a verdict of guilty, but they were not drawn with that care and clearness as would likely

obviate a misunderstanding of their purpose. They were refused probably for that reason, and because of another instruction requested and given which told the jury that "the defendants are presumed to be innocent until their guilt is established by legal evidence beyond a reasonable doubt, and should you, or any of you, have a reasonable doubt of their guilt, you should acquit them." It is true, a defendant in a criminal case, on request, is entitled to a complete and specific instruction applicable to each individual juror that he must be satisfied from the evidence that each essential element of the crime with which the defendant is charged has been proved beyond a reasonable doubt before consenting to a finding of guilty.

Refused instruction No. 23, while authorizing the jury to consider the evidence tending to show the commission of another offense with all the other evidence relative to the crime charged, limited its probative value to "determining the purpose and intent," "weight and credibility," "motive and good or bad faith" of the defendants, "and whether or not the alleged burglary, if committed, was or was not a part of a criminal program or system." The questions urged in support of this instruction will not likely arise on a retrial of this case, and hence no further attention will be given them.

Objections on the ground of self-serving and hearsay were sustained to offered evidence by the defendants tending to prove that Mrs. Miller, appellant, during the Christmas season of 1923, in the presence of Caul, exhibited a bedspread and six napkins to the witness, and stated that Caul had given them to her in payment of a past due board bill, and at, about or near this time, Caul, in the presence of Mrs. Miller and other persons, said that his mother had given him the bedspread and napkins and that he had given them to Mrs. Miller.

The proffered evidence excluded and the evidence ad-

mitted tending to show one of the defendants guilty of an extraneous crime had the effect of injecting into the case then on trial an issue, as we have seen, from which an illogical inference might, and in all probability, in this case was drawn by the jury, that is to say, if Mrs. Miller was guilty of larceny, she must therefore be guilty of burglary, of which offense she was then on trial, when there was no evidence to connect one with the other, or again, we may say, no common features between the two crimes. *Smith* v. *State* (1858), 10 Ind. 106; *Lovell* v. *State* (1859), 12 Ind. 18; *Todd* v. *State* (1869), 31 Ind. 514; *Dunn* v. *State* (1904), 162 Ind. 174, 181, 70 N. E. 521. Nor was the evidence admissible on the theory that the intent in the instant case was equivocal. *Shears* v. *State* (1897), 147 Ind. 51, 46 N. E. 331.

For the reasons suggested, the motion of both appellants for a new trial should have been granted.

Judgment as to both appellants reversed, with instructions to grant them a new trial. The clerk of this court is directed to make and certify the usual order to the Superintendent of the Indiana Woman's Prison for the return of Mrs. Jennie Miller to the custody of the sheriff of Newton County, Indiana, as also an order to the Superintendent of the Indiana Reformatory for the return of Gerald Fehlman to the custody of the sheriff of Newton county, Indiana.