WHEELER *v*. STATE OF INDIANA.

[No. 269S25. Filed December 18, 1970. No petition for rehearing filed.]

*Donald D. Chiappetta, Frederick F. McClellan,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was indicted for first degree murder by the Delaware County Grand Jury. The appellant having pleaded not guilty, after trial of said matter the jury

returned a verdict of guilty to the charge of first degree murder and assessed the defendant's punishment as life in prison.

Evidence introduced at the trial indicates that on February 4, 1967, the decedent, Zula Fletcher, was driven home by her son after an evening spent visiting friends. He let her out of his car and waited to see if her third-floor apartment light would come on, signifying she had entered safely. Her light never came on. Two of the decedent's neighbors heard a scream. One of them, Harriett Thornburg, went downstairs to ask her niece if she had screamed, and while talking to her niece, she saw defendant going down the stairs. Her niece also saw the defendant leaving the apartment building. Both identified the defendant at trial. They went upstairs to the third floor where the decedent lived and were looking around when Mr. Fletcher, the decedent's son, came upstairs and found his mother in her apartment with her head bashed in. There were pry marks on Mrs. Fletcher's door and wood splinters on the floor. Her apartment had been ransacked, there was a pool of blood on the floor, and her broken glasses were lying on the floor. Defendant was arrested a few hours later, after an attempt to escape being arrested. Defendant's clothing contained blood spots of the same type as Zula Fletcher's but of a type different than his own. Defendant's shoe sole contained a sliver of glass which was testified to as having come from the broken glasses of the decedent.

The defendant first argues on appeal that by the exclusion from the jury of persons who do not believe in the death penalty, the defendant has been denied the right to a fair cross section of the population of the county where the crime was alleged to have been committed. Here, the two prospective jurors stated that they could not vote for the death penalty "under any circumstances," even though defendant was proven guilty "beyond a reasonable doubt". Thus, in accordance with *Witherspoon* v. *State of Illinois* (1968), 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776, these

persons were irrevocably committed not to vote for the death penalty and were therefore properly excluded from the jury. *Maxwell* v. *Bishop* (1970), 398 U. S. 262, 90 S. Ct. 1578, 26 L. Ed. 2d 221; *Boulden* v. *Holman* (1969), 394 U. S. 478, 89 S. Ct. 1138, 22 L. Ed. 2d 433.

Defendant also claims that the State imposed a religious test on the jurors by asking whether any of the jurors had any religious or moral beliefs which would prevent them from voting for the death penalty. Article 1, Section 5 of the Constitution of the State of Indiana states that "No religious test shall be required as a qualification for any office of trust or profit". It is patent that this section is applicable only to office-holders of trust and profit and has no application to qualifications of jurors.

We further point out that there is no showing that the answer from such a question was used as grounds for challenge for cause of any venireman or that any venireman was excused on that ground. A variety of questions may be asked as a basis for use of peremptory challenges by either party which are not grounds for challenge for cause. We thus find no error committed by the court in the respect urged.

Appellant next contends that the following question posed to witness Rebecca Brinkley by the prosecuting attorney constituted grounds for a mistrial because it mentioned the defendant by name before he was so identified. "Which direction did Mr. Wheeler go when he got to the bottom of the steps from the third floor to the second floor?" However, the court strongly admonished the jury not to consider the reference to the defendant in the following language:

"The Court now wants to instruct you to highly disregard any reference whatsoever made to the defendant a question put by the Deputy Prosecuting Attorney to this witness. In no event are you to consider any such reference when making your determination or deliberation when you finally retire to deliberate upon your verdict in this case. I cannot stress this point too strongly. You may proceed."

With this strong admonition of the trial court judge, we find no abuse of the court's discretion in denying the motion for a mistrial. *Duke* v. *State* (1968), 249 Ind. 466, 233 N. E. 2d 159; *Young* v. *State* (1970), 254 Ind. 379, 260 N. E. 2d 572.

Appellant urges this Court to reverse on the basis that on redirect examination Officer Kenneth Kelley was asked: "Do you have any estimate of how many photographs you have in your house concerning suspected criminals?" This question was objected to on the grounds that it revealed the past criminal record of the defendant. However, the court properly admonished the jury to disregard the question. It is significant, too, that the question was asked to clarify an impression left by the defense attorney that Officer Kelley was out to "get" the defendant and had his picture at home for that purpose.

Evidence introduced at the trial indicates that blood was drawn from the decedent by Coroner Marshall Foust. Said blood was then handed to laboratory technician Mary Pollhemus, who placed the blood on the legal shelf of the laboratory refrigerator. Appellant objects to the admission of this evidence because the blood was left unguarded in the unlocked refrigerator for a period of approximately thirty hours. This Court said in *Guthrie* v. *State* (1970), 254 Ind. 356, 363, 260 N. E. 2d 579, 584:

> "Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. See *People* v. *Riser* (1956), 47 Cal. 2d 566, 305 P. 2d 1; *Breeding* v. *State* (1959), 220 Md. 193, 151 A. 2d 743; *State* v. *Baines* (Mo. 1965), 394 S. W. 2d 312; *Commonwealth* v. *White* (1967), 353 Mass. 409, 232 N. E. 2d 335. We believe such a rule is well grounded in logic and reason."

Here, the testimony indicates that the possibility of tampering was reasonably excluded by the State.

Appellant next contends that the court erred in permitting the introduction into evidence of a sliver of glass taken from the defendant's shoe on the basis that the sliver was not proven to be part of the broken glasses of the decedent, and was therefore irrelevant and immaterial to this cause of action. Expert testimony, however, established a strong likelihood that the sliver of glass found in defendant's shoe sole came from the broken glasses belonging to Zula Fletcher.

Appellant's contention that it is unknown from a reading of the indictment and the statute whether the defendant was charged with a felony or a misdemeanor (and therefore a denial of his constitutional rights) is unwarranted. Burns' Ind. Stat. Anno. § 9-101 (1956 Repl.) defines a felony as being any crime or public offense "which *may* be punished with death or imprisonment in the state prison. . . ." (Emphasis added) The Offenses Against Property Act provides for fine or imprisonment *or* imprisonment in the state prison. Burns' Ind. Stat. Anno., § 10-3039 (1970 Supp.). See *Young* v. *State* (1970), 254 Ind. 379, 260 N. E. 2d 572. It is clear defendant was charged with a felony.

Instruction 46 was objected to by the defendant on the basis that it apprised the jury that circumstantial evidence is not a reliable test unless the circumstances *exclude beyond a reasonable doubt* every other hypothesis except the single one of guilt. Defendant would have instructed the jury that circumstantial evidence is not reliable unless the circumstances *exclude to a moral certainty* every other hypothesis except the single one of guilt. In *Miller* v. *State* (1968), 250 Ind. 338, 344, 236 N. E. 2d 173, 176, this Court stated:

> ". . . we must determine . . . whether there is substantial evidence of probative value from which the jury could have concluded or inferred beyond a reasonable doubt that every reasonable hypothesis of innocence . . . was excluded."

Thus, the court's instruction was proper. We do not think the jury was misled.

Instruction Number 40 is objected to by appellant because it does not state that the defendant did not avail himself of the *privilege* the law gives him not to take the stand. Instead, the instruction reads:

"The defendant in this case had a right to go upon the stand and testify in his own behalf if he chose to do so. The law, however, expressly provides that no presumption adverse to him is to arise from the mere fact that he does not place himself upon the witness stand. So, in this case, the mere fact that the defendant has not taken the stand should not be permitted by you to prejudice him in any way. It should not be considered as evidence of either his guilt or innocence. The failure of the defendant to testify is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part."

This instruction was proper. The instruction in our opinion makes it clear that the defendant had the privilege of not testifying without any prejudice or presumptions against him.

Defendant claims he should have been allowed to withdraw his plea of not guilty for the purpose of filing a motion to quash and that the trial court abused its discretion in denying him this right. The facts indicate that appellant had competent counsel at the time of his arraignment in February of 1967, and that said counsel had five months in which he could have filed such a motion before he withdrew as counsel for defendant in July of 1967. *Mack v. State* (1932), 203 Ind. 355, 180 N. E. 279, stated that the refusal to allow a plea of not guilty to be withdrawn rests within the sound discretion of the trial court and that one factor to consider is the amount of delay in filing the request to withdraw. Thus we find no abuse of discretion.

Former Rule 1-4D reads as follows:

"*Discharge for Delay in Criminal Trials. 1. Defendant in Jail*—No defendant shall be detained in jail on a charge, without a trial, for a continuous period embracing more than six [6] months from the date the criminal charge against such defendant is filed, or from the date of his

arrest on such charge (which ever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last mentioned circumstances, the prosecuting attorney shall make such statement in a motion for continuance not later than ten [10] days prior to the date set for trial, or if such motion is filed less than ten [10] days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor."

Defendant was arrested on February 5, 1967, and was granted a continuance on June 13, 1967. Defendant's attorney moved for a continuance on September 26, 1967, which the court granted. Although the court informed all parties concerned that if a motion for a continuance was made, he would be inclined to grant it whether defendant liked it or not, such a motion was chargeable to defendant since it was requested by his attorney and was for defendant's benefit. Additionally defendant audibly agreed to the continuance on September 26, 1967.

Considering only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom, we find there is evidence from which the triers of the facts could infer that the defendant was guilty beyond a reasonable doubt. Two witnesses testified they saw defendant run from the apartment building where Zula Fletcher was killed, blood appeared on some of defendant's belongings, and a sliver of glass, which was testified to as coming from decedent's glasses, was found in defendant's shoe sole. This evidence, the fact that the defendant fled before being apprehended, and other evidence introduced at trial was sufficient to find defendant guilty.

Judgment is therefore affirmed.

Hunter, C.J., Givan and DeBruler, JJ., concur; Jackson, J., dissents.

NOTE.—Reported in 264 N. E. 2d 600.