THOMAS AUBREY *v*. STATE OF INDIANA.

No. 373S59.  Filed February 19, 1974.]

*Ferd Samper, Jr., Samper and Samper,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of Murder in the First Degree,[1] and sentenced to life imprisonment. His appeal presents two questions, treated in the following order:

---

1.  Burns Ind. Ann. Stat. § 10-3401, IC 1971, 35-13-4-1. Murder— First degree—Penalty.—Whoever purposely and with premeditated malice, or by the unlawful and malicious use or detonation of any explosive, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree and on conviction shall suffer death or be imprisoned in the state prison during life. [Acts 1941, ch. 148, § 1, p. 447; 1971, P.L. 454, § 1, p. 2093.]

I. The sufficiency of the evidence upon the issue of the requisite premeditation.

II. The denial of the defendant's motion for a mistrial for prosecutorial misconduct.

\* \* \*

ISSUE I. Decedent, Defendant and witness Lane were companions. Lane and the defendant were together in the defendant's home in Indianapolis on September 1, 1970. At that time, the defendant told the witness that he was mad and wanted to get "hold" of the decedent. The decedent had been in Ohio, but he telephoned Lane that evening and told him that he was returning and was then in Richmond, Indiana. Lane so advised the defendant, who said that he wanted to catch the decedent on the highway. The defendant and Lane left in Lane's automobile and intercepted the deceased. The defendant alighted from Lane's automobile, and Lane returned to the house alone, and the defendant returned with the decedent in the decedent's automobile. Lane arrived first, and when the defendant and the decedent arrived they were mad at one Jim Pierce. The defendant asked Lane to take him to Jim Pierce's. Lane consented and they departed, this time in the decedent's automobile. At this time, the defendant took the murder weapon, a pistol, from the house and concealed it under the dashboard of the automobile. They drove to their destination but did not stop, as there was another automobile approaching. The defendant instructed Lane to drive on, which he did. He turned around and returned but the defendant said, "there is too much heat. Let's go." Lane drove on and was stopped by the County Sheriff who searched the car. The Sheriff did not find the gun, and he released them. They returned to the defendant's home, and on the way the defendant told Lane that there were only three people who knew they were going "out there."

Lane and the defendant returned to the defendant's house, the defendant went in the front door and instructed Lane to look aroud in the back and see if there were any police

there. Lane did so, found no police and entered the house through the back door. As he entered the house, he heard the defendant and the decedent arguing in the living room at the front of the house. Lane walked into the living room, as the argument continued. The decedent was denying that he understood what the defendant was saying. The defendant brought the gun out, shot the decedent through the head and, calling the decedent an obscene name, stated that he now knew what he was talking about. The decedent fell to the floor.

After shooting the decedent, the defendant rubbed the gun against the decedent's hand, dropped the gun to the floor and told Lane to call the police, which he did. When Lane returned from the telephone, the defendant instructed him to tell the police that the decedent had accosted them with the gun and that it went off as he, the decedent, and the defendant were fighting over it. Lane placed a pillow under the decedent's head and as they awaited the arrival of the police, the defendant kicked the decedent in the mouth and said, "dead men don't tell no tales."

From the foregoing, the jury was warranted in finding the defendant guilty of murder in the first degree. Defendant has cited us to the following quotation from *Everett* v. *State* (1935), 208 Ind. 145, 149, 195 N. E. 77.

> "* * * In order that there may be such premeditated malice as will make a killing murder in the first degree the thought of taking a life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act."

We agree with the statement, but we are of the opinion that the evidence herein fulfills those requirements. The defendant's statement to Lane at the time he was thwarted in his plan to see Jim Pierce and settle some difference with him indicated that he had concluded that the decedent had notified the Sheriff's office that the defendant should be intercepted. When they returned to the house, the defendant

wanted to be sure that there were no police around. An argument erupted between the defendant and the decedent immediately upon the former's entering the house. The defendant's statement as he fired the pistol into the defendant, "now you know what I am talking about," and his kicking the decedent after he had fallen to the floor and his statement, "dead men don't tell no tales," in context with his prior actions and statement evidenced that he had theretofore consciously conceived the idea of shooting the decedent and had formed a deliberate intention to do so. Premeditation need not continue over any protracted period of time. The formation of the intention to kill and the killing may be as instantaneous as successive thoughts. *Brewer* v. *State* (1969), 253 Ind. 154, 252 N. E. 2d 429. *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439; and intent and malice may be inferred from the circumstances in evidence and the use of a deadly weapon. *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462, *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192.

ISSUE II. To support his claim that the court erred in denying a motion for mistrial for prosecutorial misconduct, the defendant directs our attention to an incident that occurred during the prosecutor's interrogation of the State's witness. The prosecutor had previously asked a series of objectionable questions, and the defense objections had been sustained. Before the prosecutor had completed the next question, defense counsel interrupted with another objection. Tempers were on edge and the prosecutor and defense counsel exchanged immaterial and uncomplimentary remarks alluding to each other's trial conduct. The trial judge interrupted with the following admonition to the jury: "Ladies and Gentlemen of the Jury, you will ignore the exchanges between the lawyer and the deputy prosecutor, in arriving at a verdict in this case. You will decide this case only from the evidence that you hear from the witness stand." With this, the prosecutor laughed and announced that he had no further questions. The court excused the jury, and admonished the prosecutor for his action.

Defense counsel made no motion for a mistrial, and the trial was resumed without objection.

Without in any way intending to condone the prosecutor's action, we cannot say that there is anything about the record that indicates that it rose to the level that required a mistrial to be declared under the criteria recently set forth by this Court in *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312.

We find no reversible error, and the judgment of the trial court is affirmed.

Arterburn, C.J. and DeBruler, Givan, Hunter, JJ., concur.

NOTE.—Reported in 307 N. E. 2d 67.