STEVEN MILLER v. STATE OF INDIANA.

[No. 1176S382.  Filed July 6, 1977.]

*B. K. Delph,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellant was convicted of rape, Ind. Code § 35-13-4-3 (Burns 1975) and sodomy, Ind. Code § 35-1-89-1 (Burns 1975), after trial by jury in the Lake Criminal Court, and received sentences of fifteen years and two to fourteen years imprisonment respectively. Appellant raises three issues on appeal:

(1) failure of the trial court to instruct the jury as to the State's burden of proof;

(2) sufficiency of the evidence;

(3) "excessivenesss" of the verdict.

## I.

Appellant complains that the trial court omitted to instruct the jury that the State bore the burden of proof on all issues. There appear in the record the following instructions which were read to the jury:

Court's Preliminary Instruction No. 2

"To each count of the Information in this case the Defendant has entered a plea of not guilty, which makes it incumbent upon the State of Indiana to prove to your satisfaction, beyond a reasonable doubt, each and every material allegation of either or both counts of said Information.

The Defendant comes into Court presumed to be innocent of the charge and this presumption remains with him throughout the trial until and unless it is overcome by competent proof of guilt beyond a reasonable doubt."

Court's Final Instruction No. 2

"To each count of the Information in this case, the Defendant has entered a plea of not guilty, which makes it

incumbent upon the State of Indiana to prove to your satisfaction, beyond a reasonable doubt, each and every material allegation of either or both counts of said information."

Court's Final Instruction No. 6

"The fact that an Information has been filed charging the Defendant with the commission of a crime does not give rise to any presumption of guilt and is not to be considered by the Jury as any evidence of guilt. On the contrary, it is a fundamental concept in our law that the Defendant comes into Court presumed to be innocent of the charge, and this presumption remains throughout the trial of the case until and unless it is overcome by competent proof of guilt beyond a reasonable doubt. Every reasonable doubt arising from the evidence, or the lack of evidence in this case must be construed in favor of the Defendant, and it is the duty of the Jury to reconcile the evidence in accordance with this presumption of innocence if you can reasonably do so."

Appellant did not object to any of these instructions or offer any of his own governing this issue. Even so, appellant correctly asserts that a complete failure by the trial court to instruct the jury as to the burden of proof would constitute fundamental error, in that the trial court is required *sua sponte* to so instruct, Ind. R. Crim. P. 8 (F), and failure to inform the jury as to the State's burden of proof would seriously call into question the fairness of the proceedings leading to appellant's conviction. See *Winston* v. *State,* (1975) Ind. App., 332 N.E.2d 229.

Here, however, the trial court did instruct the jury that the State was required to prove all of the elements of the offenses charged beyond a reasonable doubt and that the presumption of innocence remained with appellant until overcome by proof beyond a reasonable doubt. It omitted to inform them that the State alone bears this burden, which never shifts to the accused, *Smith* v. *State,* (1969) 252 Ind. 425, 249 N.E.2d 493; *Whitaker* v. *State,* (1960) 240 Ind. 676, 168 N.E.2d 212, and therefore the instructions on the point were not complete. However, at the same time, the

instructions did not deviate by placing any burden, directly or inferentially upon the accused; and did, we believe, state the law sufficiently well that it cannot be said that the court wholly failed to instruct on the burden of proof. The inadequacy of the instructions was not therefore fundamental error requiring appellant's conviction to be reversed.

## II.

On December 5, 1975, the prosecuting witness went on a blind date arranged by a girlfriend, along with that girlfriend and her date. The two couples traveled in the automobile of the witness' date. They went from Hammond to a bar in Illinois, then left to drive to another bar. During the evening the prosecuting witness became disenchanted both with her date and with the group's plans to visit various bars. She asked to be taken home, but instead was let out of the car in Burnham, Illinois, sometime after 10:30 p.m., with only about a dollar. The prosecuting witness resorted to hitchhiking; two young men in a van gave her a ride back to downtown Hammond. She attempted to walk to some friends' house but began hitchhiking again because it was raining. A blue pick-up truck driven by a lone man stopped for her. She noticed a license plate on the front bearing a cross and the word "Calvary." As she entered the truck the driver asked her where she was going, and she told him. She faced him during this conversation, and the area, a business district, was well lighted.

After driving some distance the man pulled into an alley; the prosecuting witness asked where he was going, and he pushed her back into the seat, saying, "You're not going anywhere." She opened the door and screamed, and the man seized her by the throat, choking her. Holding her with one arm, he made a fist and threatened to punch her, whereupon she ceased struggling. The man undressed and ordered her to undress, and she did so. He ordered her to perform fellatio upon him, and she did. Then he pushed her over and had sexual intercourse with her. Afterward he made her dress and released

her. The witness several times during the fifteen- to twenty-minute episode asked the man to release her, and began crying when ordered to fellate him.

The prosecuting witness flagged down a car, and was taken to her home. Her father immediately notified the police. The witness was taken to St. Margaret Hospital in Hammond where an emergency room examination showed no signs of violent injury. Spermatozoa were found in a vaginal smear taken from the witness. The witness gave Sergeant Ronald Dubish a description of her assailant as being a white male in his early twenties, weighing approximately 160 pounds, and having dark brown curly hair of medium length. She also gave the description of the truck and license appearing above.

At trial the prosecuting witness identified appellant as the man who raped and sodomized her. She also identified a photograph of a pick-up truck as representing the truck in which she was assaulted. Records of the Bureau of Motor Vehicles were introduced showing that the photographed truck was registered to appellant.

Appellant, his wife, and his sister-in-law testified that on the night of December 5th, appellant left his work at Republic Steel, picked up his wife and sister-in-law at a roller skating rink, and drove home, picking up their child from a babysitter's home. He denied seeing the prosecuting witness or being in the vicinity of the attack.

Appellant argues that the prosecuting witness' testimony exhibits uncertainty and confusion, and that the jury could not reasonably have accepted her account over appellant's unimpeached alibi evidence. The uncertainty referred to consists of the witness' inability to recall the last names of either her blind date or the girlfriend who arranged the date. Appellant cites *Baker* v. *State,* (1956) 236 Ind. 55, 138 N.E.2d 641, where a robbery conviction based upon the victim's identification of the accused was reversed, where the accused offered an alibi defense. The similarity of

the facts of Baker to the facts of this case ends here. The victim in Baker, an elderly woman, was impeached by evidence of several statements she had made, one in former testimony, that she could not identify the robber. She had also been exposed to a suggestive identification procedure at police headquarters. No such facts appear here. The prosecuting witness' testimony was certain, uncontradictory, and corroborated by her description of appellant and his truck. In such a case the jury could reasonably have believed either the prosecuting witness or appellant and his witnesses. For this Court to reverse appellant's conviction for lack of sufficient evidence of probative value it would be necessary for us to reweigh the evidence and to attempt to determine the relative credibility of the prosecution and defense witnesses. That is a function for which this Court is not adapted and is one which we frequently disavow. See *Horton* v. *State,* (1976) 265 Ind. 393, 354 N.E.2d 242, 244; *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236, 241; *Smith* v. *State,* (1976) 265 Ind. 283, 354 N.E.2d 216, 218. There was sufficient evidence to support the jury's verdict.

### III.

Appellant's final stated issue, "whether the jury's verdict is excessive and thus contrary to law," appears to present two arguments. The first of these is a second attack on the sufficiency of the evidence: absence of sufficient proof that the sexual intercourse was forcible and without the consent of the prosecuting witness. The witness testified that she was choked, forcibly restrained from leaving the truck, and threatened with being struck by appellant's fist. She testified that she screamed, cried, pleaded, and feared for her life. This evidence would support the finding that the intercourse was forcible and against the victim's will. *Dewey* v. *State,* (1976) 264 Ind. 403, 345 N.E.2d 842. To the extent that appellant's argument may seek to have us disbelieve the testimony of the prosecuting witness, we must repeat our recognition in

Part II above that this Court does not judge the credibility of witnesses.

Appellant also, under this third issue, requests the Court to exercise its power under Article 7, § 4 of the Indiana Constitution, to review his rape sentence and reduce the same to two years imprisonment. Appellant notes that this offense was not aggravated by injury to the victim or use of a weapon, and that appellant had never been convicted of any crime prior to these convictions. We are once again required to decline to review a criminal sentence, because the power conferred by Article 7, § 4, cannot be rationally exercised until the Court has developed procedures for its use, and we have not yet done so. See *Parker* v. *State,* (1976) 265 Ind. 595, 358 N.E.2d 110, and cases cited therein. The convictions are affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 364 N.E.2d 129.