WALTER FRANK INMAN *v.* STATE OF INDIANA

[No. 677S469. Filed December 21, 1978. Rehearing denied March 30, 1979.]

*Jack G. Hittle, J. Michael Antrim, Church, Roberts & Beerbower*, of Noblesville, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

GIVAN, C.J.— Appellant was convicted of second degree murder and was sentenced to a term of 15 to 25 years imprisonment.

On the evening of July 30, 1976, appellant, his nephew Mark Inman, the decedent Charles Hoffman, and one Carol Biggs went to a movie near Carmel. After a series of events following the movie, including the drinking of whiskey, the group went to the home of one Lee Turner. Mrs. Turner stated that she awoke that morning and saw appellant standing in front of her closet where she kept a loaded pistol. Appellant then left the room, woke his companions, and showed his nephew a gun, saying "Look what I got." The four walked outside to the car. Appellant

then yelled "Hey Chuck" to the decedent and immediately shot him in the chest. Hoffman died shortly afterward from the gunshot wound.

Appellant claims the State did not produce sufficient evidence to prove that he maliciously and purposely killed Hoffman. Malice and purpose may be inferred from the use of a deadly weapon in a manner likely to cause death, *McDaniel v. State*, (1978) 268 Ind. 380, 375 N.E.2d 228, and from the facts and circumstances surrounding a shooting. *Aubrey v. State*, (1974) 261 Ind. 531, 307 N.E.2d 67. The facts above recited, together with testimony of a ballistics expert that the gun could not have discharged accidentally, are more than sufficient to establish malice and purpose.

Next, appellant argues it was error to permit the introduction of three allegedly prejudicial pictures which were only cumulative and repetitious of other photographs placed in evidence. The admission of photographs in evidence is within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is shown. *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745. Further, photographs of the scene of the crime will be admitted even though they may be, to some extent, repetitious and cumulative so long as they are competent and relevant aids to the jury in orienting themselves and in understanding the evidence. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. The photographs in the case at bar, while somewhat repetitious, are relevant to assist the jury in understanding the incident. We can find no abuse of discretion on the part of the trial court.

Appellant next contends the trial court erred in not requiring the taped statements of two witnesses to be played to the jury prior to the time they testified. He argues that had they been played, he would have been entitled to an instruction limiting the in-court testimony of these witnesses to impeachment of their taped statements. This contention has no merit. First, transcripts of the tapes are not in the record and therefore we cannot consider the content of the tapes. *Hill v. State*, (1977) 267 Ind. 411, 370 N.E.2d 889. Second, the State introduced the tapes and it was entitled to decide when in the course of presenting its case the tapes would be played to the jury. The tapes in fact were played at the close of the State's case. Third, even

had the tapes been played prior to the testimony of the witnesses, there is no basis for limiting the in-court testimony to impeachment of the taped statement. We therefore hold the trial court did not err in refusing to order the State to play the tapes to the jury prior to calling these two witnesses to the stand.

Appellant claims the trial court erred in permitting a gun to be admitted in evidence because a proper chain of custody had not been established. Although there appears in the transcript some uncertainty as to the chain of custody of the gun, there is no doubt as to its authenticity. Two police officers identified the gun as the weapon recovered at the scene of the shooting. At the time of the investigation at the Turner residence, both officers had recorded the serial number of the gun in their notes, and thereby were able to identify it at trial. Under our holding in *Wilson v. State*, (1975) 263 Ind. 469, 333 N.E.2d 755, non-fungible items do not require the high degree of scrutiny regarding chain of custody as do fungible items. There is no reason in law or logic to doubt the authenticity of this gun or to refuse it in evidence on the basis of an improper chain of custody. The trial court did not err in admitting the gun.

Appellant next claims in a series of arguments that his cross-examination of three witnesses for the State was unduly curtailed and now requires reversal. The scope and extent of cross-examination lies within the sound discretion of the trial court and will be reversed only when an abuse of discretion is shown. *Ringham v. State*, (1974) 261 Ind. 628, 308 N.E.2d 863. Although the right to cross-examine a witness is fundamental to due process and the scope of cross-examination of a State's witness in a criminal case may be broad to insure a full and fair exposure of all relevant facts, the rules of evidence cannot be suspended. To allow the cross-examiner in a criminal case carte blanche would inundate trial courts with irrelevant matter confusing judges and juries, and would cause undue prolongation of the trial. *Logston v. State*, (1977) 266 Ind. 395, 363 N.E.2d 975, 976.

The first alleged error occurred during cross-examination of State's witness Judith Turner. When defense counsel asked whether she had ever told anyone her thoughts on the shooting, the court sustained an objection on the ground that it was conclusionary and without foundation. Presumably this was an attempt to

lay a foundation for impeachment. However, Turner had not yet been asked, and never was asked, for her thoughts or opinion on any aspect of the case. Hence, there was no testimony to impeach and the question was irrelevant at the time. *Anderson v. State*, (1977) 267 Ind. 289, 370 N.E.2d 318.

Second, witness Carol Biggs was asked whether she had ever told anyone in the Hamilton County prosecutor's office that she thought the shooting was an accident. An objection by the State on the ground of hearsay was sustained. This was not objectionable hearsay since the out-of-court declarant was not another person but the witness herself. See *Jethroe v. State*, (1974) 262 Ind. 505, 319 N.E.2d 133. However, the question called for a conclusion of the witness and thus was objectionable under *Fletcher v. State*, (1961) 241 Ind. 409, 172 N.E.2d 853. We therefore can find no error in the trial court's ultimate decision to sustain the objection.

Third, defense counsel asked both Carol Biggs and Mark Inman whether, from their observations, they would call this shooting an accident. Objections to both questions on the grounds that they called for conclusions by the witnesses were properly sustained. *Fletcher v. State, supra.*

Appellant next contends the trial court erred in permitting the jury instructions to be taken to the jury room. This error was harmless because the crucial requirement of first reading the instructions in open court in the presence of the parties and their attorneys was met. *Jameison v. State*, (1978) 268 Ind. 599, 377 N.E.2d 404.

Appellant further claims the trial court erred in not reducing all its instructions to writing. He states in his brief that the trial court gave all the instructions to the jury orally, then presented the jury the written instructions for use in the jury room, telling them to read the instructions in their entirety. He concedes this alleged oral statement does not appear in the transcript. Yet he still argues that it qualified and explained one of the court's final instructions, thereby violating IC § 35-1-35-1 [Burns 1975]. However, since the alleged statement is not in the record, we cannot consider it. *Hill v. State, supra.* But even assuming *arguendo* that the statement was made, it

had essentially the same meaning as the court's final instruction number 1 and does not qualify or modify that instruction in any way. We find no error in this contention.

Appellant next claims the trial court erred in giving several instructions and in refusing several instructions. Instruction 14 gave the statutory definitions of first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. Although appellant argues there was no evidence to support the elements of these first three crimes, the evidence heretofore recited is more than sufficient to justify the giving of this instruction.

Appellant next contends that Instruction 19 implied to the jury that the defendant has a duty to prove something. The contested portion of that instruction is as follows:

> Whenever it is shown that a homicide is unlawfully and purposely committed, with a deliberate intent, malice may be inferred in the absence of any explanations or extenuating circumstances.

Appellant argues that *Abel v. State*, (1975) 165 Ind.App. 664, 333 N.E.2d 848 dictates a reversal of his conviction. However, *Abel* was decided not upon the basis that the instruction placed the burden upon the defendant, but that it constituted an impermissible comment upon the defendant's failure to testify. Nor does *Parker v. State*, (1894) 136 Ind. 284, 35 N.E. 1105 support appellant's position. There, the instruction explicitly stated that "the failure of either of the defendants to account for his whereabouts . . . may be properly considered" by the jury. The Court in that case held that this instruction constituted reversible error in that the failure of the defendants to explain their whereabouts could not properly be considered as a circumstance tending to prove guilt.

The instruction in the case at bar, however, is wholly different from that in *Parker*. This instruction concerns the element of malice and merely informs the jury that "malice may be inferred in the absence of any explanations or extenuating circumstances." It has long been the rule of law in this State that malice may be inferred from the facts and circumstances surrounding a shooting. *Owens v. State, supra; Aubrey v. State, supra*, and cases cited therein. This instruction simply follows that rule and permits, but does not require, the jury to consider the evidence in the case in determining malice. If anything,

the instruction actually benefits the accused in that it tacitly invites the jury to consider mitigating circumstances in the evidence which may tend to disprove malice. To hold this instruction to be reversible error would be to exalt form over substance. We therefore hold the trial court did not err in giving instruction 19.

Instruction 22 named and defined three unlawful acts which might have been committed here and which might have served as the basis for a conviction for involuntary manslaughter: (1) assault; (2) pointing a firearm at another person; and (3) drawing or threatening to use a firearm on another. There is ample evidence in the record to support the giving of this instruction.

In Instruction 25, the jury was told that where only circumstantial evidence is involved, the evidence must exclude every reasonable hypothesis of innocence. The appellant wanted this instruction amended to read that "the proof must not only coincide with the hypothesis of guilt, but it must also be consistent with every other reasonable conclusion". The instruction as given by the trial court was a correct statement of the law. *Wheeler v. State*, (1970) 255 Ind. 395, 264 N.E.2d 600. The trial court therefore did not err in refusing to amend the instruction.

The trial court gave Instruction 28, which informed the jury as to lesser included offenses and told them that if they found the appellant guilty but had a reasonable doubt between two degrees of an offense, they should then convict him of the lesser degree. Appellant says this instruction permits the jury to disregard other instructions and to pick and choose among the various possible charges upon which to convict. This instruction was a correct statement of the law. IC § 35-1-36-1 [Burns 1975]. We fail to see how a criminal defendant can be harmed in any way by this instruction.

Appellant argues that his tendered Instruction 2 regarding the use of motive by the jury should not have been rejected. However, the court accepted State's Instruction 6 which in essence states the same thing as appellant's tendered instruction. It is not error to refuse an instruction the substance of which is adequately covered by other instructions. *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264.

Next, appellant contends it was error to allow the charge of first degree murder to go to the jury because there was no evidence of premeditation. The element of premeditation may be proved by both direct and circumstantial evidence. *Sanders v. State*, (1972) 259 Ind. 43, 284 N.E.2d 751. The evidence as previously recited was sufficient to justify the trial court's decision to allow the charge of first degree murder to go to the jury.

Finally, appellant argues that the cumulative effect of the foregoing alleged errors requires a reversal. We have found nothing improper in the trial of this case. We therefore find no adverse cumulative effect.

The judgment of the trial court is in all things affirmed.

Hunter, Pivarnik and Prentice, JJ. concur.

DeBruler, J. dissents with opinion.

## DISSENTING OPINION

DEBRULER, J. — Our statute, Ind. Code § 35-1-54-1, repealed effective October 1, 1977, applicable here, defines second degree murder as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree...."

Inman contends on appeal that the trial court, over his objection, gave an erroneous instruction on the element of malice. Such challenged instruction stated:

> "In law, the term malice includes ill will, hatred, anger, revenge and every unlawful, malevolent and wicked motive. An act done with wicked mind, and attended with such circumstances as plainly indicates a heart regardless of social duty and fatally bent on mischief, constitute malice within the meaning of the law. Hence, malice is implied from every wicked, willfull and deliberate act done by one person against another however, sudden, which shows an abandoned and wicked heart. While it is necessary, in order to sustain a charge of murder in either the first or second degree, to show the existence of malice, yet this does not mean that the prosecution must prove any special ill-will, hatred or grudge against the person who was assailed. *Whenever it is shown that a homicide is unlawfully and purposely committed, with a deliberate intent, malice*

*may be inferred in the absence of any explanations or extenuating circumstances.*" (Emphasis added.)

Inman objected to the inclusion of the last sentence in the instruction contending that it was an incorrect statement of the law in that it implied that the accused must sustain a burden of proof.

It is elementary that malice is a mental state which is a separate, distinct, and essential statutory element of the crime of second degree murder. *Wilson v. State*, (1978) 268 Ind. 112, 374 N.E.2d 45; *Horton v. State*, (1976) 265 Ind. 393, 354 N.E.2d 242; *Barnes v. State*, (1975) 263 Ind. 320, 330 N.E.2d 743; *Turner v. State*, (1972) 258 Ind. 627, 280 N.E.2d 621; *Miller v. State*, (1961) 242 Ind. 678, 181 N.E.2d 633; *Landreth v. State*, (1929) 201 Ind. 691, 171 N.E. 192. The burden is upon the State to prove to the satisfaction of the jury beyond a reasonable doubt that the killing was done maliciously. Such a burden cannot be shifted or diminished. *Miller v. State*, (1977) 266 Ind. 461, 364 N.E.2d 129; *Noelke v. State*, (1938) 214 Ind. 427, 15 N.E.2d 950; *Fehlman v. State*, (1927) 199 Ind. 746, 161 N.E. 8. Satisfaction of this burden occurs when the State establishes facts and reasonable inferences therefrom which show malice. The inference that malice existed cannot be permitted to rest upon the failure or weakness of the defense or the silence of the accused. *United States v. Morley*, (7th Cir. 1938) 99 F.2d 683.

It is evident upon reading this instruction that the last sentence thereof which is challenged by appellant sets this instruction apart from malice instructions previously considered by the Court in homicide cases. While instructions have been sanctioned which suggested to the jury that malice may be properly inferred from selected facts, acts and circumstances, none have invited the jury to base such an inference upon the absence of explanations. Inman relies upon *Abel v. State*, (1975) 165 Ind.App. 664, 333 N.E.2d 848, in which the Court of Appeals condemned an instruction which told the jury that an inference of guilt of theft or burglary may arise from the possession of stolen property shortly after it was stolen, "coupled with the absence of a satisfactory explanation." While such case is supportive, it is not wholly satisfactory here because the rationale was not that such instruction impermissibly placed a burden upon the accused, but that it constituted a forbidden comment upon the accused's failure to testify. However, the case of *Arthur*

*v. State*, (1949) 227 Ind. 493, 86 N.E.2d 698, relied upon in that case in condemning a similarly defective instruction in an auto banditry case, states the principle relied upon by appellant in his objection to this instruction.

> "Any instruction by the court . . . which would in any manner place the burden upon the appellant to prove his innocence, or force him to introduce evidence to create a reasonable doubt in the minds of the jurors, is erroneous. It is the affirmative duty of the State in criminal cases to prove the defendant's guilt beyond a reasonable doubt, and this burden cannot be shifted at any time to the defendant." 227 Ind. at 497.

*Dedrick v. State*, (1936) 210 Ind. 259, 2 N.E.2d 409; *Dorak v. State*, (1915) 183 Ind. 622, 109 N.E. 771; *Trogdon v. State*, (1892) 133 Ind. 1, 32 N.E. 725.

In *Arthur*, the instruction found defective blatantly informed the jury that if the State proved that the accused was found in exclusive possession of recently stolen goods, "the law imposes upon him the burden of accounting for his possession, and of showing that such possession was innocently acquired; and if he fails to do so . . . the presumption arises that he is the thief." There is of course no such direct mandatory language in the instruction challenged by appellant Inman in this case.

In *Parker v. State*, (1894) 136 Ind. 284, 292, 35 N.E. 1105, a homicide case, a succeeding case to *Doan v. State*, (1866) 26 Ind. 495, relied upon by appellant, this Court applied this same principle against shifting the State's burden in considering an alibi instruction which concluded with these statements:

> " '[A]nd the failure of either of the defendants to account for his whereabouts during all the time within which the offense might have been committed, is not of itself a circumstance tending to prove his guilt, but a failure of this character may be properly considered by you in connection with any other evidence in the case, tending to prove guilt, if you find that there is such.' " 136 Ind. at 291.

It is to be noted that the instruction did not mandate the jury to consider the failure to account, but merely offered it for consideration by the jury, and in this respect, the instruction is unlike the *Arthur* instruction. However, the Court went on to condemn this part of the instruction as erroneous, saying:

"In criminal cases, the entire burden is upon the State from the beginning, and the accused is not bound to explain anything, and his failure to do so can not be considered as a circumstance tending to prove his guilt." 136 Ind. at 292.

The instruction before us, by reason of the inclusion of the challenged last sentence, would engender in the jury the belief that the explanation called for by it would be helpful to the defense side of the case, as its production would prevent the inference of malice from being made and would thereby be contrary to the need of the prosecution side of the case to prove malice and the guilt of the accused. Moreover, this instruction deals with malice which is a state of mind, and the jury would realize that the state of mind of the defendant is a fact peculiarly within his knowledge, and that a beneficial explanation thereof would be readily, conveniently and uniquely available to the defense side for use. In light of the fact that this instruction contemplated explanations helpful and most readily available to the defense, the conclusion emerges that this instruction by necessary implication informed the jury that if the defendant failed to offer an explanation of his state of mind at the time of the fatal shooting, as he did so fail to do in this case, then the avenue by reason of such failure was open to it to infer malice. This instruction therefor impermissibly placed part of the State's burden of proof on the element of malice upon the defendant and was erroneous.

The judgment should be reversed with instructions to grant appellant a new trial.

NOTE—Reported at 383 N.E.2d 820.